IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 97-10648

JAMES H NEWBERRY

Plaintiff-Appellant

v.

EAST TEXAS STATE UNIVERSITY;
WILLIAM WADLEY; ROBERT E HOUSTON

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas

November 18, 1998

Before GARWOOD, KING, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this disabilities case, plaintiff James H. Newberry appeals the district court's refusal to instruct the jury that a "perception of disability" or "record of disability" would qualify as a disability under the Americans with Disabilities Act. Under the facts of this case, no reasonable jury could have found that there existed a "perception of disability" or "record of disability" without first finding that Newberry had a "disability." We thus find that he was not entitled to an instruction concerning "perception of disability" or "record of disability." We also affirm the trial court's dismissal of various other claims.

James H. Newberry, a tenured professor of photography at East Texas State University, was fired in 1994. He filed suit, alleging that he suffered a psychiatric disability. Newberry claimed that Dr. William Wadley and Dr. Robert E. Houston, superiors of his at ETSU, conspired to violate his civil rights and that ETSU dismissed him illegally on account of his disability.

Newberry's association with ETSU, which has since moved underneath the umbrella of Texas A&M University and is called Texas A&M--Commerce, began in 1979, when he started working as a professor of photography there. The employment relationship was troubled from early on, as Newberry's faculty colleagues recommended that he be denied tenure. Nonetheless, ETSU granted Newberry tenure in 1984.

Newberry's initial appointment was in the Department of Journalism and Graphic Arts. Tension, however, developed between Newberry and Dr. Jack Hillwig, appointed as department chair in August 1989. Newberry, according to Hillwig, worked fewer hours than his colleagues, preferred to work only on Tuesdays and Thursdays, did not work in the morning, and kept no office hours. Hillwig also testified that Newberry threatened and harassed him. Hillwig subsequently resigned, out of fear, according to ETSU, that Newberry would undermine Hillwig's own chance of winning tenure. At that time, Houston, the Dean of the College of Arts and Sciences, found Newberry's conduct to be noncollegial, and suggested to Newberry that he obtain counseling.

In 1992, a group that included Newberry recommended that the photography program be moved to the Department of Art, and ETSU acceded to the request. The Department was headed by Dr. Wadley, and Houston was Wadley's superior. Soon enough, however, Newberry wished he was back in the Department of Journalism and Graphic Arts. Witnesses testified that he threatened to sue Wadley, refused to attend 8 a.m. faculty meetings, and resisted participating in graduate reviews of art students. Several faculty members, apparently concerned that Newberry's behavior would cause Wadley to leave, approached Houston. On December 1, 1993, Houston sent a memorandum to Newberry warning him that if his behavior towards his colleagues did not become more professional, he might be dismissed.

Newberry and Houston met several times in the next two weeks, but the substance of those meetings is unclear. Houston also met with Newberry's campus counselor Randy Bodenhemer, who later denied that he told Houston that Newberry was disabled. On February 15, 1994, Newberry drafted a proposal under which ETSU would grant him a year's paid sick leave, during which he would study art in New York. There is some dispute as to whether Newberry made this proposal spontaneously or whether Houston had earlier suggested the year off. In any event, Houston refused to grant the request in the absence of a letter from a psychiatrist indicating that Newberry required accommodation.

On May 23, 1994, Wadley recommended Newberry's dismissal, and Newberry was dismissed two days later, though he would continue to

receive salary and benefits for a year. Newberry duly filed an appeal according to ETSU procedures. A faculty committee voted, 6-5, that Newberry's tenure should not be revoked, but recommended that Newberry not be returned to the Department of Art. This vote, however, was merely advisory, and ETSU President Jerry Morris upheld Newberry's dismissal. ETSU's Board of Regents in turn upheld this decision.

Newberry filed suit against ETSU, Wadley, and Houston, alleging numerous claims. The most important of these claims for purposes of this appeal are that ETSU violated the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12213, and that the defendants conspired to violate his civil rights in violation of 42 U.S.C. §§ 1985 and 1986. Newberry filed additional federal claims under 42 U.S.C. § 1983 and the Rehabilitation Act, 29 U.S.C. §§ 701-797b. State claims included intentional infliction of emotional distress, civil conspiracy, and a claim under the Texas Labor Code.

The trial lasted six days. At trial, a psychiatrist and a licensed professional counselor who had treated Newberry between 1992 and 1994 both testified. The counselor testified that Newberry suffered from obsessive compulsive traits, and the psychiatrist specifically diagnosed him as suffering from obsessive compulsive personality disorder. Testimony indicated that Newberry had also seen another psychiatrist for treatment. That psychiatrist and Newberry's regular physician made diagnoses of obsessive compulsive disorder as well.

According to Newberry's testifying witnesses, the obsessive compulsive disorder had numerous effects on Newberry's basic physical and mental functions at work and at home. Newberry himself testified that he had difficulty cleaning himself, waking up, sleeping, scheduling his daily routine, and controlling his bowel function. The disorder, he testified, also interfered with his relations with others by instilling in him excessive perfectionism, rigidly ethical behavior, and an insistence on addressing all details of his interpersonal relationships.

As early as late 1992, according to Newberry, Wadley observed physical symptoms of depression and suggested that Newberry obtain counseling. In April 1993, Houston advised Newberry that he believed Newberry suffered from a serious psychological problem and should seek psychiatric or other mental health care. In December 1993, Houston, aware that Newberry was seeing a licensed professional counselor employed by ETSU, met with the counselor and allegedly indicated that he believed Newberry was suffering from psychological problems, and suggested to the counselor the possibility of Newberry's taking a leave of absence. At around the same time, Houston discussed Newberry with other faculty members, who allegedly characterized Newberry with phrases like "paranoid," "nuts," "crazy," and "having mental difficulties." Houston also discussed Newberry with ETSU's inside counsel and its president. Finally, between February and April, 1994, Houston was authorized to visit with Newberry's psychiatrist to obtain a diagnosis of a

mental disorder. Although the psychiatrist contacted him, Houston decided not to visit with the psychiatrist.

No witness testified that he perceived Newberry to be disabled. Dr. Alan Harris, Newberry's psychiatric expert; Randy Bodenhemer, his psychologist; James Cornehls, Newberry's economic expert; two former students of Newberry's; and various members of the faculty and administration all testified that they did not regard him as disabled.

After Newberry rested his case, the defendants moved for judgment pursuant to Federal Rule of Civil Procedure 50(a). The court dismissed the §§ 1985 and 1986 claims on the basis that Wadley and Houston were protected by qualified immunity. In addition, it dismissed the § 1983 claim, on the basis that ETSU is not a "person" subject to suit under that section, and the emotional distress claim, in the absence of evidence of outrageous conduct. The court refused to dismiss the ADA claim.

While the court did not specifically comment on the remaining claims, the Rehabilitation Act and Texas Labor Code claims essentially overlap with the ADA claim, and Newberry's proposed jury instructions did not mention these claims specifically. Newberry's proposed jury instructions did specifically mention the Texas civil conspiracy claim. The court's jury instructions omitted this claim, perhaps because the court had dismissed the similar § 1985 claim.

At the charge conference, Newberry did not object to the omission of the conspiracy claim. He did, however, specifically

6

object to the judge's truncation of the definition of "disability" that Newberry had offered with respect to the first element of the ADA claim. Under the plaintiff's proposal, Newberry would satisfy this element by showing "that he had a disability or perceived disability or record of disability." The court, however, refused to include the "perceived disability or record of disability" language. At the charge conference, the court overruled Newberry's objection.

The jury found that Newberry was not a qualified individual with a disability under the ADA, and the court entered judgment on the verdict. Newberry appeals. He specifically challenges only the district court's charge as to "disability" and the dismissal of the conspiracy claims.

II

It is uncontested that the definition of "disability" that appellant requested tracked the statutory language. See 42 U.S.C. § 12102(2) ("Disability means ... (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."). In addition, at least some evidence indicated that administration officials and other faculty members believed that Newberry had mental problems and suggested counseling. A reasonable jury therefore might have concluded that a perception existed that Newberry suffered from such conditions, which we assume, *arguendo only*, could be found to constitute a perception of disability.

7

Under the facts of this case, however, no reasonable jury could have concluded both that Newberry did not suffer from a disability and that he was dismissed because of a perception that he was disabled.

Newberry was required to show that his disability (or perception or record thereof) was a motivating factor in the decision to dismiss him. See, e.g., Hypes v. First Commerce Corp., 134 F.3d 721, 726 (5th Cir. 1998). Had he been able to show that he in fact suffered a substantial impairment of major life functions, then he might have been able to show that this impairment motivated his dismissal and that ETSU refused to allow a reasonable accommodation. Now that Newberry must rely only on a perception of disability, however, he must show that this perception was a motivating factor in his dismissal.

Newberry cannot show this. All the evidence indicates that the university dismissed him because of his work performance and lack of collegiality. In the absence of any evidence that the university was concerned specifically about Newberry's being mentally ill--which would be the case if they believed, for example, that mentally ill people are inherently dangerous, and they fired him to avoid the danger--then the perception of him as mentally ill could not have been a motivating factor in his dismissal.

Section 12102(2)(C) is concerned not with symptoms, but with categorization. That is, where an employee engages in conduct that is legitimately a basis for dismissal, and the employer believes

8

that the employee's conduct is symptomatic of disability, the employer may fire the employee on the basis of the conduct itself, as long as the collateral assessment of disability plays no role in the decision to dismiss. An employee dismissed for unprofessional behavior might seek refuge in § 12102(2)(A). But an employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment.

The regulations and the EEOC's "Interpretive Guidance on Title I of the Americans with Disabilities Act" state:

(l) Is regarded as having such an impairment means:
    (1)    Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
    (2)    Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
    (3)    Has none of the impairments defined [above] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

Subsection (1) is inapposite. It protects employees from employers who believe a minor impairment to be more serious than it is. For example, if Newberry had a mild case of obsessive compulsive disorder that did not interfere with his work, but ETSU unnecessarily worried that the disorder would prevent him from working successfully, this subsection would apply. In this case, the issue urged by appellant is not whether ETSU exaggerated the effect of Newberry's impairment, but rather whether ETSU misattributed Newberry's poor work performance to a disability.

9

Subsection (2) is also irrelevant. There is no evidence that Newberry's obsessive compulsiveness caused difficulties only because of others' attitudes about the disorder. Newberry's dismissal came about not because of others' attitudes about the disorder, but because his behavior interfered with his job performance, and perhaps because the behavior displeased others.

Subsection (3) might appear to apply literally but the Guidelines clearly explain its purpose with the following example: "This situation could occur, for example, if an employer discharged an employee in response to a rumor that the employee is infected with Human Immunodeficiency Virus (HIV). Even though the rumor is totally unfounded and the individual has no impairment at all, the individual is considered an individual with a disability ...." 29 C.F.R. pt. 1630 app. Here, Newberry was dismissed not because of rumors that he was obsessive compulsive, but because of his conduct.

We must uphold a jury verdict if "based upon the record . . . the challenged instruction could not have affected the outcome of the case." Bender v. Brumley, 1 F.3d 271, 276-77 (5th Cir. 1993) (internal quotation marks omitted); see also Russell v. Plano Bank & Trust, 130 F.3d 715, 719 (5th Cir. 1997). A judgment will be reversed based on a faulty jury charge only where "the charge as a whole leaves us with substantial and ineradicable doubt the jury has been properly guided in its deliberations." Hall v. State Farm Fire & Cas. Co., 937 F.2d 210, 214 (5th Cir. 1991) (internal quotation marks omitted). Because under the facts of this case,

there are no circumstances in which the change in the jury charge could have affected the verdict, no such doubt exists.

III

The evidence furnishes no support for Newberry's § 1985(3) claim that he was dismissed because of animus directed against him on account of his alleged disability.[1] In <u>Burns-Toole v. Byrne</u>, 11 F.3d 1270 (5th Cir. 1994), we refused to consider a claim that § 1985(3) extends to religious discrimination. We acknowledged that the scope of § 1985(3) was an "interesting" question. <u>Id.</u> at 1275 n.25.[2] Nonetheless, we held that § 1985(3) could not be applied in the absence of evidence of "some class-based animus." <u>Id.</u> at 1276. We noted: "[The plaintiff] contends that she was discriminated against because she is a Seventh Day Adventist. She has failed, however, to present any evidence in support of the proposition that

---

[1]Given this finding, we need not address whether the claims were barred under the intra-corporate conspiracy doctrine or the approach taken in <u>Great American Fed. S&L Ass'n v. Novotny</u>, 99 S.Ct. 2345 (1979).

[2]In <u>Deubert v. Gulf Fed. Sav. Bank</u>, 820 F.2d 754 (5th Cir. 1987), we held that to state a claim under § 1985(3), plaintiffs must allege that they are victims of a race-based conspiracy. This holding was clouded by the Supreme Court's statement that "some racial or perhaps otherwise class-based, invidiously discriminatory animus" is a prerequisite to a § 1985(3) action. <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971). The Court, however, has never held that nonracial animus is sufficient. <u>See</u> <u>United Bhd. of Carpenters v. Scott</u>, 463 U.S. 825 (1983) (refusing to extend § 1985(3) to commercial or economic conspiracies); <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263 (1993) (refusing to extend § 1985(3) to conspiracies against women seeking abortions). Thus, <u>Deubert</u> remains the law in this circuit.

11

the defendants discriminate against Seventh Day Adventists as a class." Id.

Even if Newberry has presented some evidence that he was discriminated against because of his mental illness, he has presented no evidence that ETSU discriminated against the mentally ill or disabled as a class. Therefore, Newberry cannot maintain his §§ 1985 and 1986 claims.[3]

## IV

Newberry has not contested the dismissal of his § 1983 claim or of his emotional distress claim, and they are waived. See Fed. R. App. P. 28(a). He failed to object to the jury instruction that omitted the civil conspiracy claim under Texas law, and it is also waived. See Latuso v. Uniroyal, Inc., 783 F.2d 1241, 1242 (5th Cir. 1986); see also Fed. R. Civ. P. 49(a). To the extent that Newberry's Rehabilitation Act claim does not overlap his ADA claim, that claim is also defeated, because Newberry has offered no evidence that he was adversely treated solely because of his handicap. See Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir. 1993). Finally, the Texas Labor Code claim overlaps entirely with the ADA claim. See Tex. Lab. Code § 21.001(3) (Vernon 1996).

## V

For the above reasons, we AFFIRM the judgment.

---

[3]If the § 1985 claim fails, so must the § 1986 claim. See 42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed ... shall be liable ....").

12

AFFIRMED.