**Robert C. TAYLOR, Plaintiff,**

v.

**BLUE CROSS AND BLUE SHIELD OF TEXAS, INC., Defendant.**

No. CA3:97–CV–2826–R.

United States District Court, N.D. Texas, Dallas Division.

June 28, 1999.

John E. Wall, Jr., Law Office of John E. Wall, Jr., Dallas, TX, for Plaintiff.

Joyce–Marie Garay, Mark D. Downey, Teresa Ruiz, Bell Nunnally & Martin, Dallas, TX, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

BUCHMEYER, Chief Judge.

Plaintiff Robert Taylor asserts claims against Defendant Blue Cross and Blue Shield of Texas, Inc. ("BCBS") for discrimination in employment on the basis of disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §§ 12101–12213 (1995), and seeks injunctive relief, damages, and reinstatement. Now before this Court is Defendant's Motion for Summary Judgment, filed on April 12, 1999. For the reasons stated below, Defendant's motion is **GRANTED**.

## I. BACKGROUND FACTS

On or about July 11, 1994, Mr. Taylor began working for BCBS as a sales instructor in the Corporate Training and Development Department, where his duties included defining training needs for

various BCBS positions and departments, designing and organizing training courses, conducting sales and product-related training courses, surveying off-the-shelf training programs to determine whether they met the needs of various internal BCBS departments, and establishing and maintaining good client relationships. BCBS claims that, beginning in January 1996, Mr. Taylor exhibited continual performance problems, including failing to complete projects, misrepresenting the status of projects, and submitting work of poor quality. BCBS counseled Mr. Taylor about his poor work performance in September 1996, after which his work improved somewhat. BCBS then assigned Mr. Taylor to the InfoCenter PC Project, which required him to develop a training program for BCBS employees for use of the InfoCenter PC database. BCBS claims Mr. Taylor devoted insufficient attention to the project and was unresponsive to the client, in addition to misrepresenting his progress on the program. BCBS eventually removed Mr. Taylor from this assignment, allegedly based on his poor performance.

Mr. Taylor claims that around the middle of 1995 he noticed that he was becoming increasingly tired, lethargic, and unable to maintain concentration. He alleges that while he continued to perform competently the essential aspects of his job, he had to work longer hours to complete the same tasks, suffered memory loss, and would fall asleep in meetings and at his desk. He also claims that he was not qualified for the InfoCenter assignment due to its high level of technicality. He maintains that he told his supervisors he did not have the skills to do the project and that he asked for assistance, but BCBS was not responsive.

On July 18, 1997, Mr. Taylor consulted with his primary care physician regarding his feelings of drowsiness, lack of energy, and difficult breathing. His doctor scheduled him to participate in a sleep study at a local hospital. On July 19, 1997, Mr.

Taylor returned to work, advised Charles Chandler, his supervisor, of his doctor's referral, and asked for permission to miss two days of work to participate in the sleep study. Mr. Chandler gave Mr. Taylor leave to attend the study. On July 22, 1997, Mr. Chandler called Mr. Taylor into a meeting with himself and BCBS's Director of Employee Relations. Mr. Chandler informed Mr. Taylor that he would be discharged from his current position and that he had thirty days to find another position within the company before his employment with BCBS would be terminated altogether. BCBS claims it discharged Mr. Taylor because of his poor work history, mismanagement of projects, and misrepresentations made to supervisors.

During the thirty day period, Mr. Taylor was unsuccessful in his attempts to locate another position. During this period, he also participated in the sleep study and was diagnosed with sleep apnea. On August 14, 1997, he sent an e-mail message to the Director of Employee Relations informing her that he had participated in the sleep study and had been diagnosed with sleep apnea. He asked BCBS to reconsider the decision to terminate him and to consider accommodating him, although he never suggested what an appropriate accommodation might be. According to BCBS, this was the first time anyone at the company became aware of Mr. Taylor's condition. Mr. Taylor's doctor prescribed him a Constant Positive Air Pressure ("CPAP") machine, which he began using around September 1997. Since beginning treatment with the CPAP, Mr. Taylor·no longer suffers from any of the symptoms of sleep apnea.

On September 4, 1997, Mr. Taylor filed a complaint with the EEOC alleging discrimination in violation of the Americans with Disabilities Act. On November 19, 1997, he filed this lawsuit pursuant to the ADA, asserting claims against BCBS for discrimination in employment on the basis of his disability, sleep apnea, and for retaliation and seeking injunctive relief, dam-

ages, and reinstatement. BCBS filed this Motion for Summary Judgment on April 12, 1999.

## II. ANALYSIS

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Melton v. Teachers Ins. & Annuity Ass'n. of Am.*, 114 F.3d 557, 559 (5th Cir.1997). The court must decide all reasonable doubts and inferences in the light most favorable to the party opposing the motion. *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir.1994); *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 274 (1986); *Lynch Properties, Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir.1998). Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 275. Once the moving party has satisfied this burden, the nonmoving party must go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file set forth specific facts showing a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct., 1348, 1356, 89 L.Ed.2d 538 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431–32 (5th Cir.1998). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

■ Because employment discrimination claims involve nebulous questions of motivation and intent, summary judgment is usually considered an inappropriate tool for resolving these cases. *See Thornbrough v. Columbus & Greenville R.R Co.*, 760 F.2d 633, 640 (5th Cir.1985). However, if the defendant is able to present strong evidence of a legitimate, nondiscriminatory reason for its actions and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may properly be granted. *See Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir.1994); *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir.1993).

### B. Motion to Strike

In Plaintiff's Response to Defendant's Motion for Summary Judgment, Mr. Taylor moves to strike Defendant's Evidence in Support of Defendant's Motion for Summary Judgment as in excess of this Court's fifty page limit on appendix exhibits. Mr. Taylor also objects to particular paragraphs in Defendant's King and Chandler affidavits. BCBS has also filed its Objections and Motion to Strike Plaintiff's Evidence in Support of Response to Defendant's Motion for Summary Judgment, objecting to Plaintiff's Taylor and Hurst affidavits, the *Texas Workforce Commission Report*, and two sleep apnea articles.

Regarding Defendant's Evidence in Support of Defendant's Motion for Summary Judgment, this Court's Scheduling Order limits each party to fifty pages of exhibits in the Joint Appendix accompanying the Joint Motion Submission for Summary Judgment. *See* Standard Scheduling Order ¶ 6(g) (Mar. 27, 1998). The Scheduling Order explains that the Joint Appendix "SHALL CONTAIN only the relevant portions of multi-page exhibits and only the relevant portions of depositions and other discovery." However, it goes on to state that "complete copies of depositions and other discovery and of exhibits, may be filed with the District Clerk with the Joint Submission." *Id.* Because the relevant portions of BCBS's documents are included in its fifty page section of the Joint Appendix and complete copies are provided in the supplemental appendix filed under separate cover, BCBS is in compliance with this Court's Scheduling Order.

Regarding the objections to particular affidavit paragraphs made by both parties, because the Court did not rely on any of the disputed evidence in ruling on the underlying motion for summary judgment, the objections to the evidence are irrelevant. All these objections are therefore **DENIED** as moot.

## C. Disability Discrimination

■ The basic framework for analyzing employment discrimination cases involves a series of shifting burdens of proof that was laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668, 677–79 (1973). While thus case analyzed employment discrimination claims brought pursuant to Title VII, the same analysis has been held to apply to cases involving the ADA. *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995). The plaintiff first bears the burden of proving a prima facie case of discrimination by a preponderance of the evidence. *See St. Mary's Honor Ctr. v.*

*Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407, 415 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215 (1981); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. The burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678. Finally, the plaintiff must prove by a preponderance of the evidence that the reasons offered by the defendant were not its true reasons but were instead pretext for discrimination. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215. The ultimate burden of persuading the trier of fact of the defendant's intentional discrimination remains at all times with the plaintiff, *see id.; Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747, 125 L.Ed.2d at 416, who must show that but for her participation in the investigation or proceeding, he would have been promoted. *See Long v. Eastfield College*, 88 F.3d 300, 305 n. 4 (5th Cir.1996); *Jack v. Texaco Research Ctr.*, 743 F.2d 1129, 1131 (5th Cir.1984); *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983).

### a. Prima facie case

■ The standard for establishing a prima facie employment discrimination case is not particularly demanding, requiring only a minimal showing by the plaintiff. *See Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir.1985); *see also Carpenter v. BT Office Prod. Int'l, Inc.*, No. 3:96–CV–2355–P, 1997 WL 756586, at \*5 (N.D.Tex. Dec. 3, 1997), *aff'd*, 149 F.3d 1179 (5th Cir.1998). To survive a motion for summary judgment, it is sufficient for the plaintiff to raise a genuine issue of material fact. *See Thornbrough*, 760 F.2d at 641 n. 8. To establish a prima facie case of disability discrimination, a plaintiff must demonstrate "that (a) he has a disability; (b) he is a qualified individual

for the job in question; and (c) an adverse employment decision was made because of his disability." *Hamilton v. Southwestern Bell Tel. Co.,* 136 F.3d 1047, 1050 (5th Cir.1998); *see also Talk v. Delta Airlines. Inc.,* 165 F.3d 1021, 1024 (5th Cir.1999).

The threshold issue is the first prong of the prima facie case: whether the plaintiff can establish "that he suffers from a disability protected by the ADA." *Hamilton,* 136 F.3d at 1050; *see also Talk,* 165 F.3d at 1024; *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1119 (5th Cir.1998). The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12102(2) (1995). Thus, for Mr. Taylor to establish that he has a disability, he must show first that he has a physical or mental impairment and second that the impairment substantially limits one or more of his major life activities.

While the ADA does not itself provide a definition of "substantially limits" or "major life activities," courts have adhered to the definitions promulgated by the EEOC and set forth in the Code of Federal Regulations. According to this interpretation, "substantially limited" means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (1998). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1998). Whether an impairment substantially limits a major life activity is determined in light of "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2) (1998).

On July 22, 1999, the United States Supreme Court addressed the ADA's disability definition provision, concluding "that the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment." *Sutton v. United Air Lines, Inc.,* —— U.S. ——, ——, 119 S.Ct. 2139, 2143, —— L.Ed.2d —— (1999). Writing for the majority in *Sutton,* Justice O'Connor rejected prior EEOC and Justice Department interpretations of the ADA directing that mitigating measures not be taken into account when determining whether an individual is disabled, explaining:

Looking at the Act as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is "substantially limited" in a major life activity and thus "disabled" under the Act.

*Id.* —— U.S. at ——, 119 S.Ct. at 2146; *see also Albertsons, Inc. v. Kirkingburg,* —— U.S. ——, —— ——, 119 S.Ct. 2162, 2168–89, —— L.Ed.2d —— (1999); *Murphy v. United Parcel Serv., Inc.,* —— U.S. ——, ——, 119 S.Ct. 2133, 2137, —— L.Ed.2d —— (1999). Specifically, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton,* —— U.S. at ——, 119 S.Ct. at 2146.

 This Court will therefore view the facts in this case in light of the Supreme

Court's recent decisions. After participating in a sleep study in the summer of 1997, Mr. Taylor was diagnosed with "[m]oderate obstructive sleep apnea," Greg Foster, Nocturnal Polysomnogram Report at 1, *reprinted in* J.A. at 643, which was "successfully reversed with nasal CPAP." Greg Foster, CPAP Titration Report at 2. *reprinted in* J.A. at 645. Mr. Taylor himself admits that his sleep apnea has been corrected. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4 ("In or around September 1997, Taylor began using the CPAP, and has not suffered any of the symptoms of sleep apnea from which he had been suffering prior to his using the machine."). At his deposition, Mr. Taylor conceded that he was fully capable of driving, holding conversations, communicating with people, and performing his job duties. *See* Taylor Dep. at 86, *reprinted in* Def.'s Evidence in Supp. of Def.'s Mot. for Summ. J. as Ex. J. In addition, since his termination from BCBS, Mr. Taylor has taught classes at a local college, acted as a training consultant, and worked as Regional Director of Training and Development for Hilton Hotels Corporation. *See id.* at 36–37. Because Mr. Taylor's physical impairment has been corrected and does not substantially limit any major life activity, he does not suffer from a disability within the meaning of the ADA. There is therefore no genuine issue of material fact as to whether Mr. Taylor has a disability. Because he cannot establish the first prong of a prima facie case of disability discrimination, all Mr. Taylor's claims are **DISMISSED.**

■ Mr. Taylor also fails to establish the second prong of his prima facie case, which requires him to demonstrate that he is a qualified individual with a disability. A qualified person is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position" that he holds. Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12111(8) (1995). Using this definition as a guide, the Court must consider: (1) whether Mr. Taylor

could perform the essential functions of his job, meaning functions that have more than a marginal relationship to the job in question, and, if not, (2) whether any reasonable accommodation by BCBS would allow him to carry out those functions. *See Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 759 (5th Cir. 1996).

Mr. Taylor asserts that allowing him "to seek medical treatment for his disability would have certainly been a reasonable accommodation under the circumstances." Pl.'s Resp.to Def.'s Mot. for Summ. J. at 13. However, it was Mr. Taylor's responsibility to inform his employer that he suffered from a disability and required a reasonable accommodation. *See Burch v. Coca–Cola Co.,* 119 F.3d 305, 318 (5th Cir. 1997) (finding that an employee's "failure to request a cognizable, reasonable accommodation" entitled the employer to judgment as a matter of law), *cert. denied,* —— U.S. ——, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998); *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 165 (5th Cir.1996) ("[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one.").

While Mr. Taylor requested permission from his supervisor to participate in the sleep study, he did not inform his employer that he had a disability prior to being given notice of his discharge. Mr. Chandler notified Mr. Taylor of his impending termination on July 22, 1997, and Mr. Taylor did not tell anyone at BCBS that he suffered from sleep apnea until August 1997. *See* Taylor Dep. at 103–05, *reprinted in* Def.'s Evidence in Supp. of Def.'s Mot. for Summ. J. as Ex. J. Even if Mr. Chandler surmised that Mr. Taylor might suffer from a sleep disorder because he requested time off of work to participate in the sleep study, the fact that Mr. Taylor never told anyone he had a disability precludes his establishing a prima facie case. *See Brohm v. JH .Properties, Inc.,* 149 F.3d 517, 522 (6th Cir.1998) (finding that

the fact that the plaintiff did not tell his employer that "he *had* a disability; only that he *might* have one" precluded his claim of discriminatory discharge for chronic sleep deprivation).

■ Alternatively, Mr. Taylor argues that BCBS discharged him not because he had a disability but because it regarded him as having a disability. *See* Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12102(2)(C) (1995). This definition requires Mr. Taylor to produce sufficient evidence that BCBS "regarded him as having an impairment that substantially limited a major life activity, whether or not the impairment existed." *Hamilton v. Southwestern Bell Tel. Co.*, 136 F.3d 1047, 1051 (5th Cir.1998); *see also Newberry v. East Tex. State Univ.*, 161 F.3d 276, 279 (5th Cir.1998) (stating that 42 U.S.C.A. § 12102(2)(C) requires a plaintiff to "show that this perception [of disability] was a motivating factor in his dismissal"). Mr. Taylor can demonstrate that he falls within this ambit by showing that either: "(1) a covered entity mistakenly believes that [he] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, —— U.S. ——, ——, 119 S.Ct. 2139, 2149, —— L.Ed.2d —— (1999).

■ In this case, Mr. Taylor contends that after he asked Mr. Chandler for permission to participate in the sleep study, BCBS perceived him as having a disorder that substantially limited one or more major life activities. However, all the evidence in the record indicates that BCBS discharged him based on his poor work performance, not because it regarded him as disabled. *See Newberry*, 161 F.3d at 280 (explaining that "where an employee engages in conduct that is legitimately a basis for dismissal, and the employer believes that the employee's conduct is symptomatic of disability, the employer may fire the employee on the basis of the conduct

itself, as long as the collateral assessment of disability plays no role in the decision to dismiss"). Mr. Taylor's speculation, unsupported by any factual evidence, that BCBS discharged him because it regarded him as disabled cannot defeat a motion for summary judgment. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) ("This court has consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief."); *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 141 (5th Cir.1996) (affirming a district court's determination that a plaintiff's subjective belief that she was a victim of discrimination was insufficient to create a genuine issue of material fact). Therefore, he has failed to satisfy the second prong of the prima facie case by demonstrating he is a qualified individual with a disability.

The third prong of the prima facie case requires Mr. Taylor to show that BCBS dismissed him because of his disability. However, because Mr. Taylor does not suffer from a disability within the meaning of the ADA and cannot demonstrate that BCBS regarded him as having a disability within the meaning of the Act, he can not have been terminated because of his disability. Therefore, Mr. Taylor has also failed to establish the third prong of his prima facie case.

**b. BCBS's legitimate, nondiscriminatory reasons**

■ Even if Mr. Taylor had established a prima facie case, his claims would still fail because he is unable to demonstrate that the legitimate, nondiscriminatory reasons for discharge advanced by BCBS are pretext for discrimination. Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216

(1981). The defendant's burden of production is a light one, and "if the employer has produced any evidence 'which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden." *Thornton v. Neiman Marcus,* 850 F.Supp. 538, 543 (N.D.Tex.1994) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407, 417 (1993)). BCBS maintains that it terminated Mr. Taylor for numerous reasons, including that he failed to complete projects on a timely basis, misrepresented the status of his projects, demonstrated poor and inconsistent work quality, was unable to develop and design training programs on various subject areas, refused to comply with department guidelines, failed to maintain good client relationships, and mismanaged the InfoCenter PC project. These criticisms of Mr. Taylor's performance are well documented in the record. *See* BlueCross BlueShield of Texas Performance Review 1–3 (July 21, 1997), *reprinted in* J.A. at 171–74; Memo from Charles D. Chandler to Personnel File 1–2 (July 21, 1997), *reprinted in* J.A. at 86–87; E-mail from Kimberly Lain to Richard King (July 23, 1996), *reprinted in* J.A. at 288–89; Daryl Parker, Performance Expectations and Observations Worksheet 1–3 (Sept. 10, 1996), *reprinted in* J.A. at 210–12. These are legitimate, nondiscriminatory reasons sufficient to satisfy BCBS's burden of production with respect to Mr. Taylor's ADA claims.

### c. Pretext

 Even if Mr. Taylor had a disability within the meaning of the ADA, he would be unable to meet his burden of demonstrating that the reasons advanced by BCBS for his termination are pretext for discrimination. To withstand a summary judgment motion by raising a factual issue as to pretext, a plaintiff must present evidence establishing not only that the enunciated reasons for his discharge were false, but also that they operated as a pretext for discriminatory animus. *See Hicks,* 509 U.S. at 515, 113 S.Ct. at 2752, 125 L.Ed.2d at 421–22; *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993). In an ADA case, the plaintiff must ultimately demonstrate that he was terminated from his position because of his disability. *See Hamilton v. Southwestern Bell Tel. Co.,* 136 F.3d 1047, 1052 (5th Cir.1998).

In this case, Mr. Taylor responds to BCBS's legitimate, nondiscriminatory reasons by arguing that the fact that BCBS discharged him three days after he asked to take time off work to participate in the sleep study proves that BCBS's actions were pretext for discrimination. However, Mr. Taylor does not directly refute any of BCBS's complaints about his inadequate job performance, other than to argue that he received favorable job reviews in 1994. The Fifth Circuit has ruled that discrimination laws are not "vehicles for judicial second-guessing of business decisions." *Walton v. Bisco Indus., Inc.,* 119 F.3d 368, 372 (5th Cir.1997). Therefore, in the absence of even a scintilla of evidence that Mr. Taylor's job performance at the time he was discharged was satisfactory, this Court will not interfere with BCBS's business decision to terminate Mr. Taylor.

### D. Retaliation

The ADA makes it unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C.A. § 12203(a) (1995). To analyze Mr. Taylor's claim of retaliation in violation of the ADA, this Court must apply the same *McDonnell Douglas* framework it used to process his disability discrimination claim.

### a. Prima facie case

 To establish a prima facie case of retaliation in violation of the ADA, a

plaintiff must prove that: (1) he engaged in a statutorily protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between that protected activity and the adverse employment action. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n. 8 (5th Cir. 1998); *see also Webb v. Cardiothoracic Surgery Assoc.*, 139 F.3d 532, 540 (5th Cir.1998); *Messer v. Meno*, 130 F.3d 130, 140 (5th Cir.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997); *Potts v. County of Dallas*, No. 3:97–CV–1124–H, 1998 WL 345552, at *2 (N.D.Tex. June 24, 1998), *aff'd*, 168 F.3d 485 (5th Cir.1999). To satisfy the causal link prong of the prima facie case, "the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Sherrod*, 132 F.3d at 1122.

■ In this case, Mr. Taylor argues that he engaged in a protected activity when he filed his discrimination charge with the EEOC on September 4, 1997. However, BCBS had notified Mr. Taylor of his dismissal two months earlier, in July 1997, before he filed his EEOC complaint, and there is no evidence in the record that Mr. Taylor engaged in any other protected activity that could have resulted in a retaliatory discharge. Clearly BCBS's decision to terminate could not be based on knowledge of Mr. Taylor's participation in a protected activity when the dismissal preceded Mr. Taylor's having engaged in a protected activity. Thus, Mr. Taylor has failed to establish a prima facie case of retaliation in violation of the ADA, and his retaliation claims are therefore **DISMISSED.**

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety, and all of Plaintiff's claims are **DISMISSED.** It is so **ORDERED.**