**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No.  97-10352

DOUGLAS C. HAMILTON,

Plaintiff-Appellant,

VERSUS

SOUTHWESTERN BELL TELEPHONE COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the  Northern District of Texas
March 23, 1998

Before JOLLY, DUHÉ, PARKER, Circuit Judges

DUHÉ, Circuit Judge

        Douglas  C.  Hamilton  sued  his  former  employer,  Southwestern
Bell Telephone Company for discrimination under the Americans with
Disabilities Act[1] and for wrongful termination under Texas law.  He
appeals the district court's grant of summary judgment in favor of
Southwestern Bell.  Because he fails to show a disputed issue of
material fact as to the existence of a disability as defined by the
Act, he does not meet the ADA's threshold requirement.  He also
fails to show a disputed issue of fact that his firing was a result
of anything other than his egregious misconduct.  We affirm the

---

        [1]42 U.S.C. § 12101 et seq.

grant of summary judgment on both claims.

**I.**

Douglas C. Hamilton ("Hamilton") had been an at-will employee at Southwestern Bell Telephone Company ("BELL") nearly 20 years when he was fired for his heated, on-the-job encounter with another employee. He claimed that his firing was a violation of the Americans with Disabilities Act of 1990 ("ADA"), or alternatively was an unlawful discharge for refusing to participate in Project X, a BELL procedure that he claims did not follow the Public Utilities Commission ("PUC") guidelines for utilities disconnections.

About four months before he was fired, Hamilton rescued a drowning woman. For a time following the rescue, he experienced a variety of mental disturbances and suffered "extreme fatigue" that limited his ability to perform manual tasks, such as mowing his lawn. He told his supervisor, Dennis Dorsey ("Dorsey"), that his pastor thought these problems were Post Traumatic Stress Disorder ("PTSD") symptoms.

A month later, Hamilton verbally abused and struck a co-worker ("the incident") on the job. Dorsey referred Hamilton to BELL's Employee Assistance Program ("EAP"), where a social worker concluded Hamilton was suffering from agitated depression and some post-traumatic symptoms. The social worker referred him to a private counselor; he was also evaluated by a psychiatrist, Babette Farkas ("Farkas"). Both the social worker and Farkas reported PTSD. During this counseling and evaluation period, BELL received from members of Hamilton's department an anonymous letter that

accused him of being a "disgusting, dangerous and abusive man and manager."

Hamilton, believing that his job pressures exacerbated his PTSD, sought to reduce the stress he experienced in his position in BELL's revenue management department. He expressed concern about participating in Project X, a project that discontinued service, without the usual 10-day notice, to minority customers whose accounts were delinquent. He resisted participating in the project because he believed that if he participated he could be personally charged with committing a third degree felony. Although he claimed to have drafted memoranda protesting Project X, no copies of the correspondence exist.

After he was fired, Hamilton sued BELL. The district court granted summary judgment on Hamilton's ADA claim, finding no genuine fact issue as to whether his medical condition substantially limited any major life activities such that his PTSD could be considered an impairment under the ADA. It also determined that Hamilton failed to adduce any evidence showing BELL fired him solely because of his disability. The district court also granted summary judgment on the state unlawful discharge claim, finding that there was no genuine issue as to whether BELL fired Hamilton solely because he abandoned Project X. Hamilton now appeals.

## II.

We review a grant of summary judgment de novo, applying the same standard as the district court. Guillory v. Domtar

3

<u>Industries, Inc.</u>, 95 F.3d 1320 (5th Cir. 1996); <u>Armstrong v. City of Dallas</u>, 997 F.2d 62 (5th Cir. 1993). Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We review fact questions in the light most favorable to the nonmovant and questions of law <u>de novo</u>. <u>Dutcher v. Ingalls Shipbuilding</u>, 53 F.3d 723 (5th Cir. 1995).

**III.**

**A.**

To make out a <u>prima facie</u> case of discrimination under the ADA Hamilton must show that (a) he has a disability; (b) he is a qualified individual for the job in question; and (c) an adverse employment decision was made because of his disability. <u>See</u> 42 U.S.C. § 12112(a).[2] The threshold issue in a plaintiff's <u>prima facie</u> case is a showing that he suffers from a disability protected by the ADA.[3] That statute confers a special meaning to the term "disability":

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or

---

[2]<u>Cf.</u> <u>Still v. Freeport-McMoran, Inc.</u>, 120 F.3d 50, 51 (5th Cir. 1997)(per curiam); <u>Turco v. Hoechst Celanese Corp.</u>, 101 F.3d 1090, 1092 (5th Cir. 1996) (listing as the third element an employment decision made solely because of the disability but never reaching an analysis of that element and citing <u>Rizzo v. Children's World Learning Centers, Inc.</u>, 84 F.3d 758 (5th Cir. 1996)(listing as an element a decision made solely because of the disability but later describing the necessary factual determination as whether an adverse action was "taken because of her disability." <u>Id</u>. at 765.))

[3] <u>Rogers v. International Marine Terminals, Inc.</u>, 87 F.3d 755, 758 (5th Cir. 1996).

4

(C)  being regarded as having such an impairment.[4]

Hamilton claims to suffer from PTSD, which impairment, standing alone, is not necessarily a disability contemplated by the ADA.  The statute requires an impairment that substantially limits one or more of the major life activities.

The ADA defines neither "substantially limits" nor "major life activities," but the regulations promulgated by the EEOC under the ADA provide significant guidance.  Whether an impairment is substantially limiting[5] is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact.[6]  The EEOC regulations adopt the same definition of major life activities used in the Rehabilitation Act.[7]  "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[8]

_____

[4]42 U.S.C. § 12112(2).

[5]To substantially limit means:
  (i)  Unable to perform a major life activity that the average person in the general population can perform; or
  (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.
  29 C.F.R. § 1630.2(j)(1)(i)(ii).

[6]29 C.F.R. § 1630.2(j).

[7]Dutcher, 53 F.3d at 726.

[8]29 C.F.R. § 1630.2(i) provides an illustrative listing of activities.

To determine if Hamilton has presented facts that indicate his PTSD is an ADA disability, we first examine whether his PTSD is an impairment that substantially limits any major life function other than working.[9]  Only if there is no evidence of impairment to the other major life functions is an impairment to working considered.[10]

The EAP counselor found that Hamilton presented some symptoms of PTSD and Farkas, his treating psychiatrist, diagnosed PTSD. Hamilton claims his PTSD caused him to overeat to the point of being nauseous and having to go to bed, thus impairing his ability to care for himself.  He attributes his thoughts of suicide and difficulty in concentration to the mental disorder.  Additionally, Hamilton described episodes of fatigue that made it difficult for him to mow his lawn.

By his own admission, however, these impairments no longer exist and the major life functions described by the EEOC regulations have not been affected.  We have noted that "[t]he EEOC regulations provide that temporary, non-chronic impairments of short duration, with little or no permanent long-term impact, are usually not disabilities."[11]  Consequently, there was no evidence offered on which a jury could find that this impairment substantially limited a major life activity other than working.

We now examine the effect Hamilton's PTSD had on the major

---

[9]Dutcher, 53 F.3d at 726, n. 10.

[10]Id.

[11]Rogers v. International Marine Terminals, Inc., 87 F.3d at 759.

life activity of working.  With regard to working,

> [S]ubstantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.[12]

Hamilton presents no evidence that his disability prevents him from performing an entire class of jobs, or even a broad range of jobs.  The symptoms he reported included crying when faced with stress, loss of temper, and an inability to deal with customer relation issues.  By his own admission, however, Hamilton's performance level was "still ahead of his peers".  He worked his regular hours until his termination except for the week he was given off to adjust to his medication.[13]  Although Dr. Farkas diagnosed Hamilton's condition as PTSD, she did not identify specific activities within his work environment that would be substantially limited by PTSD.  Her prognosis was that Hamilton would be able to function normally without any medication.  Interestingly, despite his claim that stress in his job exacerbated his PTSD and that the mental disorder made him unable to deal with customer relations, Hamilton ran his own software distribution business for almost a year after his discharge.  He then became a senior consultant with another firm.

---

[12]29 C.F.R. § 1630.2(j)(3)(i).

[13]The existence of an impairment is to be determined without regard to mitigating measures such as medicines, or assistive or prosthetic devices.  29 C.F.R. §1630.2(h), App.

Hamilton retains the ability to compete successfully with similarly skilled individuals and no facts indicate that he is unable to perform a class of jobs nor a broad range of jobs. We agree with the district court that any work impairment Hamilton may have suffered was merely temporary; we have previously rejected attempts to transform temporary afflictions into qualifying disabilities.[14] We hold that he has failed to present evidence to satisfy the threshold requirement of an ADA claim - that he has an impairment that substantially limits a major life activity.

Having no ADA recognized disability, Hamilton has thus failed to provide summary judgment evidence that he has a record of such an impairment[15] that substantially limits a major life activity.

Under the third prong of an ADA disability, Hamilton must produce sufficient summary judgment evidence to create an issue of fact that BELL regarded him as having an impairment that substantially limited a major life activity, whether or not the impairment existed.[16] BELL continued to employ Hamilton after he

---

[14]Burch v. Coca-Cola Co., 119 F.3d 305 (5th Cir. 1997) and cases cited therein.

[15]42 U.S.C. § 12102(2)(B).

[16]42 U.S.C. § 12102(2)(C). "Is regarded as having such an impairment" means that the individual:
  (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
  (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
  (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.
 29 C.F.R § 1630.2(l)(1-3).

8

reported his mental difficulties.  He retained his managerial responsibilities following the incident until BELL's review of the episode was completed.  For an employer to regard an impairment as substantially limiting work, the employer must regard an individual as significantly restricted in his ability to perform a class or broad range of jobs.[17]  Hamilton offered no evidence that BELL regarded him to be so limited.

Hamilton presented no summary judgment evidence that workplace attitudes caused his symptoms, an alternate requirement for a finding that an employee is regarded as having an impairment. Hamilton's tearfulness, overeating, fatigue, and violent outbreak against a co-employee did not occur only as a result of the attitudes of others but were, he admits, symptomatic of PTSD.  The anonymous letter submitted to BELL supervisors accusing him of being violent was not the cause of Hamilton's symptoms.

Also, there is no evidence presented that, although his PTSD did not rise to the level of an ADA disability, BELL treated Hamilton as having a substantially limiting impairment.  In sum, we find that the record is without support for Hamilton's claim that the mental impairments imposed by his PTSD are severe enough or of sufficient duration to constitute a disability under the ADA.

**B.**

Furthermore, even if Hamilton were disabled, the ADA requires that BELL's  adverse employment action be taken because of his

---

[17]Burch v. Coca-Cola Co., 119 F.3d 305, 322 (5th Cir. 1997); Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996).

disability.[18]  Hamilton was not terminated **because of** his disability but rather because he violated BELL's policy on workplace violence.

Several weeks after the rescue, Hamilton, slamming an office door, angrily confronted a physically smaller female manager in front of witnesses after she returned to work from a shopping trip. In response to her appeal to not speak to her in such a tone, he slapped her hand down, yelling that she "get that f___ing finger out of my face."  Additional profanity followed.  He stormed from the office but then returned to continue his abusive harangue, yelling "You f____ing bitch!"  BELL found this behavior to be an egregious violation of its policies, suspended Hamilton at the beginning of February and discharged him at the end of that month.

Although Hamilton argues that the incident was caused by his PTSD, we are persuaded that the ADA does not insulate emotional or violent outbursts blamed on an impairment.[19]  An employee who is fired because of outbursts at work directed at fellow employees has no ADA claim.  BELL had instituted its policy against workplace violence, with provisions for suspension and dismissal for "extremely severe" offenses, before Hamilton's misconduct.  As a BELL employee, Hamilton was held accountable for violating this policy.  BELL cited this conduct as its reason for firing Hamilton; we do not regard this reason as pretextual merely because BELL

---

[18]42 U.S.C. § 12112(a).

[19]Little v. Federal Bureau of Investigation, 1 F.3d 255 (4th Cir. 1993) (egregious behavior of an alcoholic, whether or not disabled, provided grounds for dismissal).

10

failed to describe the misconduct as workplace violence until the Texas Employment Commission hearing.

The cause of Hamilton's discharge was not discrimination based on PTSD but was rather his failure to recognize the acceptable limits of behavior in a workplace environment. The nature of the incident, shown by the record, presents a clear case in which Hamilton was fired for his misconduct in the workplace. We adopt for an ADA claim the well-expressed reasoning applied in the context of a protected activity-retaliatory discharge claim: the rights afforded to the employee are a shield against employer retaliation, not a sword with which one may threaten or curse supervisors.[20] Hamilton can not hide behind the ADA and avoid accountability for his actions.

### C.

Having decided above that the reason for Hamilton's discharge was his egregious and violent behavior, we find it unnecessary to further address his claim of unlawful discharge.

### IV.

For the reasons cited above, we affirm the grant of summary judgment.

AFFIRMED.

---

[20]Florida Steel Corp., v. NLRB, 529 F.2d 1225, 1234 (5th Cir. 1976) citing Corriveau & Routhier Cement Block, Inc. v. NLRB,410 F.2d 347, 350 (1st Cir. 1969).