IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-60444
_____


EMMA JORDAN,

                    Plaintiff-Appellee-Cross-Appellant,

                         v.

KELLWOOD COMPANY,

                    Defendant-Appellant-Cross-Appellee.

- - - - - - - - - -
Appeals from the United States District Court
for the Northern District of Mississippi
(1:95-CV-230-B-D)
- - - - - - - - - -

July 12, 1999

Before GARWOOD, BARKSDALE, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

     Following her removal from a supervisor position, Emma
Jordan sued Kellwood Company ("Kellwood") for violation of the
Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.
§ 12101 et seq. Kellwood appeals a jury verdict in Jordan's
favor, and Jordan cross-appeals the trial court's refusal to
instruct the jury on punitive damages. We reverse the trial
court's decision not to grant Kellwood's motion for judgment as a
matter of law.

                              I

_____

     *    Pursuant to 5TH CIR. R. 47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Jordan worked as a line supervisor for Kellwood at its Calhoun City, Mississippi textile manufacturing plant. Undisputed evidence at trial established that being a line supervisor at Kellwood requires nine to ten hours' work per day and that the position cannot be readily split between two employees.

From March 17 to May 31, 1994, Jordan took a 76-day, fully paid leave of absence to have a hysterectomy. From September 9 to November 17, 1994, Jordan took a second fully paid leave of absence, lasting 70 days, to have coronary bypass surgery. During Jordan's second leave, Kellwood assigned employee Carolyn Hamilton to cover Jordan's supervisory duties.

Jerry Ellison, Kellwood's human resources manager, testified that he initially thought that Jordan would be able to return to work around October 24. Upon Jordan's return to work in November, her cardiothoracic surgeon, Dr. Gerald Wait, restricted her work to two hours per day. At that time, Kellwood allowed Jordan to perform part-time textile repair work for two hours per day and nonetheless receive her full supervisor salary. Hamilton continued to perform Jordan's supervisory duties. Dr. Wait predicted in November that Jordan would be able to return to full-time work by January 1, 1995. On December 8, 1994, Dr. Wait released Jordan to work four hours per day, during which Jordan performed textile repair and continued to receive her full supervisor salary.

Late in December 1994, Ellison and Jordan talked about Jordan resuming full-time work and her supervisory duties after the plant's Christmas holiday. Jordan returned to work on January

3, 1995, without an authorization to work full time. On January 6, she presented an authorization from Dr. Wait to work 6 hours per day. At that time, Kellwood informed Jordan that it would no longer hold the supervisor position open for her and that it would make Hamilton the new permanent supervisor of Jordan's former line. Although Jordan offered to convince Dr. Wait to authorize immediate full-time work, Kellwood remained firm in its decision. Kellwood offered Jordan her choice of two non-supervisory, hourly positions: utility worker or production sewing operator. Kellwood also said that it would consider Jordan for any supervisory position that became available once she was able to work full-time. Jordan accepted the utility worker position and remained employed in that capacity at the time of trial. No supervisor position had become available by the time of trial.

Jordan sued Kellwood, claiming that the company's decision to remove her from a supervisor position violated the ADA. Because Jordan's wages as a utility worker roughly equal what her supervisor salary would have been, Jordan sought compensatory damages only for mental anxiety. She also sought punitive damages.

The case proceeded to trial. At the close of the plaintiff's case, and again at the close of all evidence, Kellwood moved for judgment as a matter of law. Kellwood argued that no evidence indicated that Jordan was disabled for ADA purposes or that Kellwood discriminated against her on the basis of a disability.

-3-

The district court denied both motions. Jordan requested a jury instruction on punitive damages, which the district court refused to give. The jury found for Jordan and awarded her $350,000 in compensatory damages. Kellwood then moved again for judgment as a matter of law, or in the alternative for a new trial or a remittitur. The district denied the motion for judgment as a matter of law and for a new trial but granted the remittitur, reducing Jordan's award to $50,000. Jordan accepted the remittitur. The district court also ordered Kellwood to return Jordan to a supervisor position as soon as one became available.

Kellwood appeals the district court's denial of its motion for judgment as a matter of law and in the alternative for a new trial. Jordan cross-appeals the district court's refusal to instruct the jury on punitive damages. Because we find that it should have granted Kellwood's motion for judgment as a matter of law, we do not reach the district court's denial of the motion for a new trial or its refusal to instruct the jury on punitive damages.

                                II

We employ the same standards as the district court in reviewing its denial of Kellwood's motion for judgment as a matter of law. We reverse the district court's decision only if the facts and inferences point so strongly and overwhelmingly in favor of Kellwood that a reasonable jury could not have concluded that Kellwood violated the ADA. *See Robinson v. Global Marine Drilling Co.*, 110 F.3d 35, 36 (5th Cir. 1996). A mere scintilla

-4-

of evidence that Kellwood violated the ADA is not enough for a reasonable jury to have found in Jordan's favor; instead, there must have been a conflict in substantial evidence. *See Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc).

III

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Jordan did not argue to the jury that she had a disability at the time that Kellwood demoted her. Instead, she argued that she had a record of a disability and that Kellwood regarded her as disabled.

On appeal, Kellwood argues that Jordan proffered insufficient evidence to show that she either had a record of a disability or was regarded as disabled. We first examine whether the jury had before it sufficient evidence that Jordan had a record of a disability. We find that it did not. A plaintiff has a record of a disability only after having had (or when being perceived as having had) a "disability" as the ADA uses that term. *See, e.g.*, *Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1051 (5th Cir. 1998); 29 C.F.R. § 1630.2(k). A one-time illness[2] requiring temporary hospitalization but without

---

2  We note that a "record of impairment" in the ADA context generally refers to a condition that, although not necessarily present at the time of a challenged employment decision, may recur. *See, e.g.*, *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S. Ct. 1123 (1986) (considering the case of a

strong residual effects is not a substantially limiting impairment. *See, e.g.*, *Colwell v. Suffolk County Police Department*, 158 F.3d 635, 646 (2d Cir. 1998) (finding that a seven-month recovery from a hemorrhage, with "non-particularized and unspecific residual limitations," could not amount to a record of a disability for ADA purposes); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192 (5th Cir. 1996) (finding that breast cancer requiring a lumpectomy and radiation did not constitute a record of a disability); 29 C.F.R. § 1630.2(j). Otherwise, any hospitalized person would become "disabled" under the ADA, an untenable result. Nothing in evidence suggested that Jordan had a record of a physical or mental impairment that substantially limits a major life activity.

We also find that Jordan presented no evidence that Kellwood demoted her because it regarded her as disabled. Discrimination under the "regarded as" prong of 42 U.S.C. § 12102(2) requires the employer to hold a misperception:

> There are two apparent ways in which individuals may fall within [the "regarded as"] statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting

school teacher fired for susceptibility to tuberculosis). In this case, no evidence at trial indicated that Jordan would suffer a relapse or could not return to work at full strength once she recovered from her heart surgery.

-6-

impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual--it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton v. United Air Lines, Inc.*, --- U.S. ---, --- S. Ct. ---, 1999 WL 407488, *12 (June 22, 1999); *accord Murphy v. United Parcel Service, Inc.*, --- U.S. ---, --- S. Ct. ---, 1999 WL 407472, *4 (June 22, 1999); *see also* 29 C.F.R. § 1630.2(*l*). Jordan's own doctor told Kellwood that as of January 6, 1995, Jordan could work only six hours per day, not the nine-to-ten hours per day necessary for the supervisor position. Kellwood acted not upon a misperception but upon legitimate medical advice in deciding that Jordan could not supervise.

Moreover, Jordan provided no evidence that Kellwood considered her work ability so limited as to qualify for ADA protection. For ADA purposes, an individual's limited working ability does not amount to a disability unless she is unable to perform a broad class of jobs. *See, e.g.*, *Sutton*, 1999 WL 407488, *14 ("When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."); *Murphy*, 1999 WL 407472, *4 ("[T]o be

regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job."); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 805-06 (5th Cir. 1997). The only evidence that Kellwood regarded Jordan as substantially limited in her work ability was Jordan's own unsubstantiated testimony that the plant manager called her "nothing but an invalid and a cripple." A reasonable jury could not have allowed this alleged statement to overshadow uncontradicted evidence that Kellwood immediately offered Jordan her choice of alternate positions, made all necessary accommodations for her in her new job, paid her for full-time work while she worked part-time during her recovery, and offered to consider her for future supervisory jobs. Jordan did not provide sufficient evidence to show that Kellwood perceived her as unable to perform a class of jobs.

IV

A reasonable jury could not have found that Jordan falls within the ADA's protections. The district therefore erred in failing to grant Kellwood's motion for judgment as a matter of law. The judgment for Jordan in the amount of $50,000 is REVERSED.