**David EDWARDS**

v.

**WAL–MART STORES, INC.**

**No. Civ.A. 99–0011.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

Feb. 29, 2000.

**614**

Jeffrey A. Riggs, Antoon Riggs & Brame, Alexandria, LA, for David Edwards, plaintiff.

Stephen P. Beiser, Kevin L. O'Dea, McGlinchey Stafford, New Orleans, LA for Wal–Mart Stores Inc, defendant.

### RULING

LITTLE, Chief Judge.

Before this court is defendant Wal–Mart Stores, Inc.'s ("Wal–Mart") motion for summary judgment. For the following reasons, defendant's motion for summary judgment is GRANTED.

### I. BACKGROUND

Plaintiff David Edwards ("Edwards"), a 34–year–old black man, has been deaf since the age of four and is unable to speak. Throughout his life, Edwards has communicated with hearing individuals by sign language, finger spelling, and writing notes. In August 1992, Edwards was hired by Wal–Mart as a merchandise stocker. He initially worked during the day but later was moved to the night shift. During his employment, Edwards communicated with his supervisors and co-workers by writing notes or with the assistance of a co-worker who knew some sign language. From March 1993 through the rest of his employment at Wal–Mart, Edwards held a second job at a local Pizza Hut restaurant. At neither workplace did Edwards have a certified interpreter to assist him with communication. Edwards had no significant problems working at Wal–Mart during his four years there and, aside from sleeping past the break on sev-eral occasions, performed his job duties satisfactorily.

On the early morning of 17 June 1996, Ricky Estes ("Estes"), a co-worker on the night shift, allegedly witnessed Edwards remove a can of root beer from company owned inventory on a pallet, open the can, and take a drink. Estes reported the incident to the hourly support manager, Vonnie South Gorman ("Gorman"), who retrieved a videotape of the receiving area where the incident allegedly took place. Gorman and Estes viewed the videotape, which apparently confirmed what Estes had reported. Estes prepared a written statement describing what he had witnessed.

Gorman then went to the receiving area and found the open can of root beer located as Estes had it and where Gorman had seen it on the videotape. Upon searching, she did not find any other beverage cans in that area. Gorman reported the incident to the assistant manager, Rick Gardner ("Gardner"), upon his arrival to the store later that morning. Gorman and Gardner reviewed the videotape at least twice. Gorman prepared a written statement describing that which she had observed on the videotape.

Gardner also interviewed Estes. Convinced that serious misconduct in fact had occurred, Gardner, who was in charge of the store at the time, called Edwards to a meeting in the office and terminated him for unauthorized removal of company property. At the termination meeting, Gardner and Edwards communicated in their usual manner of exchanging written notes. "Russell," a co-worker and friend of Edwards who knew more sign language than Gardner, was asked to attend the meeting as well. A certified interpreter was neither requested by Edwards nor brought in voluntarily by Wal–Mart.

At the meeting, Edwards was advised that he was being terminated for taking a soda can off a pallet and consuming the contents, which constitutes theft of company property. Edwards initially denied the

incident and later argued that he thought he was picking up his own soda can, a can of 7–Up which he allegedly had bought and taken into the store. Edwards asked to see the videotape and to talk to the witnesses, but Gardner denied his request on the ground that it was against company policy. By the end of that meeting, Edwards' employment with Wal–Mart had been terminated.

When the store manager, Terry Edwards, arrived at the store on the following day, he viewed the videotape with Gardner and confirmed the latter's decision terminating Edwards. Edwards met with the store manager to appeal the termination decision, to no avail. Again, a certified interpreter was neither requested by Edwards nor brought in voluntarily by Wal–Mart at that meeting. Another co-worker named "Jay," however, was present at the meeting to facilitate communication.

The videotape of the incident was sent to the loss prevention department at Wal–Mart's home office in Bentonville, Arkansas, for safekeeping. Since then, Wal–Mart has attempted to locate the videotape but without success. Unfortunately, the tape is now lost.

On 10 April 1997, Edwards filed a charge of discrimination against Wal–Mart with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a notice of dismissal and of the right to sue on 10 August 1998. On 10 November 1998, Edwards filed a complaint against Wal–Mart in the Ninth Judicial District Court for the Parish of Rapides, State of Louisiana, alleging disability discrimination. According to Edwards, Wal–Mart terminated Edwards' employment because of his hearing and speech impairments, in violation of the Americans with Disabilities Act ("ADA") of 1990. On 6 January 1999, Wal–Mart filed a notice of removal, and the lawsuit was removed to this court shortly thereafter. On 18 January 2000, Wal–Mart filed the motion for summary judgment now before us. Edwards has filed a memorandum in opposition thereto, and Wal–Mart has submitted a reply memorandum.

## II. ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the nonmovant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Once the moving party has shown initially "that there is an absence of evidence to support the non-moving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmovant must come forward, after adequate time for discovery, with "specific facts" showing a genuine issue for trial. *See* FED.R.CIV.P. 56(e); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings to show that there is a genuine triable issue. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1076. *See also* FED.R.CIV.P. 56(e). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996).

█ In an employment discrimination case, the court focuses on whether a genuine issue exists as to whether the defendant employer intentionally discriminated against the plaintiff. *See LaPierre v. Ben-*

*son Nissan, Inc.,* 86 F.3d 444, 447–48 (5th Cir.1996). To make out a prima facie case of disability discrimination, the plaintiff must show that: (1) he has a disability; (2) he is qualified for the job; (3) he was subject to an adverse employment action because of his disability. *See Hamilton v. Southwestern Bell Telephone Co.,* 136 F.3d 1047, 1050 (5th Cir.1998).

■ Once the plaintiff has stated a prima facie case, the employer must articulate some legitimate, nondiscriminatory reason for its action that adversely affected the plaintiff. *See Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995). An employer need not prove the legitimate reason but must produce some evidence to support it. *See id.* "If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Id.* (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993)). Once the employer has met its burden, the employer's intent is a question of fact, for which the plaintiff carries the burden of persuasion. *See Daigle,* 70 F.3d at 396. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ We first address the timeliness issue raised in Wal–Mart's motion for summary judgment. Wal–Mart contends that Edwards' complaint was untimely filed and, therefore, must be dismissed. Under the ADA, a plaintiff has ninety (90) days from receipt of the written notice of dismissal and of the right to sue from the EEOC to file a lawsuit. Although the record reveals that such notice was issued to Edwards on 10 August 1998, no evidence has been presented as to when Edwards actually *received* the notice.[1] Edwards filed his complaint against Wal–Mart on 10 November 1998. Assuming that Edwards received the right-to-sue notice a few days after the date of issuance, this court finds that Edwards timely filed his complaint within ninety days of receipt of the notice. Wal–Mart's motion for summary judgment, therefore, cannot be granted on the ground that the complaint was untimely filed.

■ Next, we address the merits of the case. After a careful, thorough review of all the evidence in the record, this court finds not a single shred of evidence to support Edwards' claim that Wal–Mart terminated him because of his disabilities. There is simply no evidence of discriminatory intent or motive on the part of Wal–Mart in this case.

As Wal–Mart explained to Edwards, and as it now argues before this court, Wal–Mart terminated Edwards because the latter was seen removing and consuming company property. Under Wal–Mart's policy, such actions constitute unauthorized removal of company property (i.e. theft), which is a terminable offense. A co-worker eye witnessed the incident, and the incident was memorialized on a videotape, which was viewed by several managers in the store on different occasions. That the videotape has been lost is not fatal in this case; even when viewed in the light most favorable to Edwards, ample evidence exists in the record to support Wal–Mart's claim that the incident took place.[2]

---

1. Specifically, there is no evidence in the record that Edwards received the right-to-sue notice more than ninety days prior to his filing the lawsuit.

2. The record contains the depositions and written statements of Ricky Estes, Vaundalee ("Vonnie") South Gorman, and Rick Gardner, as well as the affidavit of Terry Edwards, which all are substantially factually consistent and support the position that the incident did take place. The four aforementioned individuals testified that they either eye witnessed the incident or viewed the incident on the videotape now lost. Even the deposition of David Edwards supports Wal–Mart's position to some extent. Edwards admitted that he picked up the "wrong" can of soda, thinking

■ It is clear that Edwards cannot prove the third element of a prima facie case of disability discrimination. Even if Edwards was able to demonstrate all three elements of a prima facie case, his claim against Wal–Mart would fail because Wal–Mart has offered a legitimate, nondiscriminatory reason for terminating Edwards' employment. Moreover, although the defendant need produce only *some* evidence to support the nondiscriminatory reason, *see Daigle*, 70 F.3d at 396, Wal–Mart has provided more than sufficient evidence in support of its action. Edwards has not persuaded this court that Wal–Mart, in terminating Edwards, intentionally discriminated against him because of his disabilities.

In fact, Edwards repeatedly testified in his depositions that he was not sure whether he was discriminated against by Wal–Mart and its personnel because of his disabilities, race, or both. (D. Edwards Dep. I at 83–84, 114–16; D. Edwards Dep. II at 112, 161–63.) Edwards admitted in each instance that he lacked certainty and was only guessing as to the reason behind the perceived prejudice. (*Id.*) Speculation and unsubstantiated assertions, especially if they are ambiguous, are inadequate to satisfy Edwards' burden of showing that there is a genuine issue of material fact for trial.

■ Edwards next argues that Wal–Mart failed reasonably to accommodate him by failing to provide a certified interpreter at the termination meeting. According to Edwards, it was Wal–Mart's responsibility to provide Edwards with an interpreter, even though Edwards had not requested one.[3] We disagree. " 'In general . . . it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed.' " *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir.1996) (quoting 29 C.F.R. § 1630.9, App. (1995)). "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Id.*

Edwards contends that he and Gardner could not fully understand each other at the termination meeting and that he had difficulty expressing his thoughts and feelings without a certified interpreter. The fact remains, however, that at any time during the termination meeting, Edwards could have let Gardner know that he needed a certified interpreter to facilitate communication and understanding. Without such request from Edwards, Gardner could not have known that Edwards was having trouble with communication, as they were communicating in their usual manner of exchanging written notes and Edwards wrote a response after every one of Gardner's questions and comments. Had Edwards requested an interpreter at the meeting and Wal–Mart failed to provide one, then Edwards might have a valid claim for failure to provide a reasonable accommodation. As the facts of this case stand, however, Edwards' claim lacks merit.

■ We note the importance of the distinction between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee due to that disability, for purposes of proving disability discrimination under the ADA. *See Taylor*, 93 F.3d at 164. The reason why the distinction is important is that the ADA re-

---

it was his own. (D. Edwards Dep. I at 82, 86–90.)

**3.** Edwards claims that he had requested a certified interpreter on several occasions in the past. Edwards does not remember, however, to whom, when, and for what reason he made such requests. (D. Edwards Dep. I at 32, 33, 51.) In other words, he does not recollect any details regarding the alleged requests. This court does not find credible Ed-

wards' unsubstantiated assertion that he had made requests for an interpreter while working at Wal–Mart. Accordingly, we assume that Edwards had not made any requests to Wal–Mart to provide him with a certified interpreter prior to the termination meeting. Edwards admits that he did not request an interpreter during the termination meeting. (D. Edwards Dep. I at 31, 50, 52; D. Edwards Dep. II at 180.)

quires employers reasonably to accommodate limitations, not disabilities. *See id.* In *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155 (5th Cir.1996), the court provides an excellent illustration of the distinction that is squarely on point with our case:

> To illustrate the distinction between a disability and a limitation resulting from a disability, consider the following hypothetical of two hearing-impaired employees: One hearing-impaired employee is an assembly worker who suffers no job limitations as a result of [his] hearing-impairment disability; [he] is able to perform the essential functions of [his] job without accommodation. The other hearing-impaired employee, however, is a telephone operator who, because of her inability to hear, is limited in her ability to perform the essential functions of her job; this disabled employee may require a reasonable accommodation as a result of her impairment. Both employees are disabled, but only one employee is limited by her disability.

*Id.* at 165.

In our case, Edwards is hearing-impaired, but he suffered no job limitations as a result of his disability while working at Wal–Mart. He, therefore, did not require accommodation.[4] As Edwards never communicated through a certified interpreter while working at Wal–Mart, or at any other job or in his personal life during the relevant four-year time period for that matter, Wal–Mart could not have anticipated Edwards' alleged need for an interpreter at the termination meeting. This court finds that Wal–Mart cannot be held responsible for failing to provide a certified interpreter at that meeting, considering Edwards had not requested one.

Upon review of the record, it is evident that the crux of Edwards' complaint regarding the termination meeting is not that he did not understand what was going on or what Gardner was telling him; it is that Edwards did not agree with the accusations against him and the termination decision. There is a world of difference between understanding and agreeing; one can understand something without agreeing with it. Edwards' problem at the meeting was that he begged to differ, not that he did not understand. A certified interpreter would have been of little, if any, assistance to Edwards in this case.

### III. CONCLUSION

The pleadings, depositions, affidavits, and other evidence in the record, when viewed in the light most favorable to Edwards, show that there is no genuine issue of material fact and that Wal–Mart is entitled to a judgment as a matter of law. There is no evidence to support Edwards' claim that Wal–Mart terminated him because of his disabilities. On the contrary, Wal–Mart had a legitimate, nondiscriminatory reason for terminating Edwards' employment, namely Edwards' unauthorized removal of company property. Moreover, under the facts of this case, Wal–Mart cannot be held liable for failing to provide Edwards with a certified interpreter at the termination meeting. Edwards' conclusory allegations, speculation, and unsubstantiated assertions are wholly inadequate to defeat Wal–Mart's properly supported motion for summary judgment. Accordingly, we hereby GRANT defendant Wal–Mart Stores, Inc.'s motion for summary judgment. Plaintiff David Edwards' case is DISMISSED WITH PREJUDICE.

### *JUDGMENT*

For the reasons given this date, defendant Wal–Mart Stores, Inc.'s motion for summary judgment is GRANTED. Plaintiff David Edwards' case against Wal–Mart is DISMISSED WITH PREJUDICE at plaintiff's cost.

---

4. This observation is bolstered by Edwards' own stipulations that he worked for Wal–Mart without significant problems for four years, (Pretrial Stipuls. at 2), and that he performed his job duties satisfactorily, (Compl. ¶ 10).