UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 31, 2004**

Charles R. Fulbruge III
Clerk

--------------------

No. 03-51362
Summary Calendar

--------------------

CLAUDIA DONALDSON,

Plaintiff–Appellant,

v.

BURLINGTON INDUSTRIES, INC; ET AL.,

Defendants,

DOUGLAS R. HARRIS; BURLINGTON RESOURCES OIL & GAS COMPANY; and
BURLINGTON RESOURCES, INC.,

Defendants–Appellees.

--------------------

Appeals from the United States District Court
for the Western District of Texas
MO-01-CV-84

--------------------

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellant Claudia Donaldson appeals the district court's grant of summary judgment in favor of Appellees. Although we agree with both of the district court's well-stated and thorough opinions granting summary judgment, and affirm accordingly, we write briefly to address Appellant's contentions.

---

[*]    Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I. BACKGROUND

Appellant was employed as a drilling assistant at Appellee Burlington Resources ("Burlington")[1] from 1997 until January 2000. In March 1999, Appellant complained to her supervisor about what Appellant allegedly perceived to be a hostile work environment. On a Friday in July 1999, Appellant verbally told Burlington management about the sexually-oriented, inappropriate conduct of a co-worker. In response, the management immediately commenced an investigation. By Monday, the management had suspended the harassing co-worker and blocked his access to the Burlington premises. The harassing co-worker was terminated twelve days after Appellant complained of his actions.

Thereafter, in a series of emails sent to her supervisor and others, Appellant made it quite clear that she was unhappy with her treatment at Burlington. Appellant met with a therapist at Burlington's expense to treat Appellant's acute stress disorder allegedly brought about by the hostility directed at her. Finally, on January 19, 2000, Appellant informed Burlington that she would not return to work because of Burlington's "reckless disregard for [Appellant's] safety." Nonetheless, Appellant indicated that she expected to be paid her full salary until Burlington rectified the situation. The next day, Burlington responded that unless Appellant returned to work by January 24, 2000, or presented a doctor's statement indicating why she could not, Burlington would assume she resigned. Instead of returning to work on January 24, Appellant sent Burlington a letter in which she stated that she was treating their request that she return to work or provide a medical excuse as a "constructive discharge."

---

[1]     We refer to all of the Appellees collectively as "Burlington" for the sake of simplicity and because it does not affect our analysis.

Appellant never returned to work. In May 2001, Appellant filed this action in the district court. In her amended complaint, Appellant claimed to have suffered sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),[2] disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"),[3] and various state law tort claims. Upon Burlington's motion, the district court, in two separate orders, granted summary judgment in favor of Burlington as to all of Appellant's claims.

On appeal, Appellant challenges the district court's dismissal of her Title VII and ADA claims and the dismissal of her state claim of intentional infliction of emotional distress. Specifically, Appellant takes issue with six of the district court's conclusions. Three of the appealed conclusions relate to Appellant's Title VII claims: 1) that Appellant did not suffer an adverse employment action, 2) that Appellant was not constructively discharged, and 3) that Burlington's explanation for it actions (leading to what Appellant argues was constructive discharge) was a pre-text. Two of the appealed conclusions relate to Appellant's ADA claim: 1) that Appellant failed to support her position that Burlington regarded her to be disabled, and 2) that "[t]he district court erred in finding that the same facts that were analyzed for sexual harassment were the same facts to weigh to decide whether [Appellant] was subjected to discrimination because of her disability or perceived disability." Appellant's Brief at 31. Finally, with respect to her state claims, Appellant argues that the district court improperly decided that the conduct was not extreme and outrageous as a matter of law. For the following reasons, we affirm.

---

[2]     42 U.S.C. §§ 2000e-1 and 2000e-2.

[3]     42 U.S.C. § 12112.

## II. ANALYSIS

"We review the granting of summary judgment de novo, applying the same criteria used by the district court in the first instance." *Clift v. Clift*, 210 F.3d 268, 269-70 (5th Cir. 2000). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 270 (internal quotation and citations omitted). "We must view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor." *Id.*

### A. The Title VII claims

### *1. Constructive discharge*

With respect to her Title VII claims, Appellant avers that the district court incorrectly held as a matter of law that Appellant was not constructively discharged. This holding was crucial because, to succeed on a quid pro quo Title VII sexual harassment claim,[4] a plaintiff must show that she suffered an adverse "tangible employment action." *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000). A plaintiff may do so by proving that she was constructively discharged. *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997).

"To prove a constructive discharge, [Appellant] must show that a reasonable person in her shoes would have felt compelled to resign." *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 301 (5th Cir. 2001) (internal quotation marks omitted). "Whether a reasonable employee

---

[4] Appellant does not raise on appeal the district court's rejection of Appellant's hostile work environment theory. *See Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000) (noting that a Title VII case may be a "quid pro quo" case or a "hostile environment" case).

4

would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not." *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

In support of her claim, Appellant makes many conclusory statements, but references only two specific events in support of her claim of constructive discharge: 1) the January 2000 letter that Burlington sent to her in which Burlington noted that they would consider Appellant to have quit if she did not return to work or supply Burlington with a Doctor's excuse, and 2) a heated meeting between her and two Burlington managers several months before she resigned.[5] Because she did not resign until well after the meeting of which she complains, it would be unreasonable to find that the meeting, standing alone, caused Appellant to feel compelled to resign. Indeed, even before that point she claims to have been in a fragile emotional state, yet she did not resign after the meeting. Assuming true Appellant's allegations that the managers' voices were raised, that they pointed in her face, and that indicated that *if* she continued sending offensive memoranda (the reason for the meeting in the first place), she would be "squashed like

---

[5] Appellant also points to selected passages from a journal kept by a supervisor as evidence that a reasonable employee would have felt compelled to resign. Appellant claims that the journal entries were "mean spirited." Appellant, however, does not even allege to have learned of the journal until the discovery process in this lawsuit. The journal itself, therefore, could not have caused Appellant to feel compelled to resign. She did not know about it. It is immaterial to our constructive discharge analysis.

a bug," these allegations cumulatively would not allow for a reasonable juror to find that a constructive discharge. Nothing indicates that a reasonable employee would think Burlington was pressuring her to quit. Rather, the evidence indicates that Burlington merely wanted her to cease sending offensive emails.

Even coupled with the letter demanding that she return to work or provide a doctor's excuse, Appellant's claim fails as a matter of law. To the extent it is at all relevant to the constructive discharge argument advanced by Appellant, the letter indicates that Burlington actually wanted Appellant to return to work  Under this Court's case law, Appellant has fallen far short of showing that a genuine question of fact exists as to whether a reasonable person would have felt compelled to resign. *See Brown v. Bunge Corp.*, 207 F.3d 776, 782-83 (5th Cir. 2000). Accordingly, the district court was correct in holding as a matter of law that Appellant was not constructively discharged.

## *2. Retaliation*

To succeed on a Title VII retaliation claim, a plaintiff must prove that she suffered an adverse employment action. *See Evans v. Houston*, 246 F.3d 344, 351 (5th Cir. 2001). "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). Appellant contends that the district court was wrong in holding that she failed to do so. In support of this claim, Appellant alleged in the district court that Burlington undertook the following adverse employment actions against her:[6] 1) Burlington

---

[6] Appellant also argues that she was retaliated against by way of constructive discharge. Constructive discharge may be considered an adverse employment action for retaliation purposes. *Landgraf v. USI Film Products*, 968 F.2d 427, 431 (5th Cir. 1992). As discussed

prevented her reimbursement under the companies workers' compensation plan for medical bills she accrued while being treated by her counselor;[7] 2) Burlington failed to provide her with sick pay from January 20-24, 2000;[8] and 3) Burlington failed to reimburse her for the medical insurance premiums that she prepaid for January 2000.[9]

Appellant has failed to show how any of these three acts could be construed as an adverse employment action under our case law. Accordingly, the district court was correct in its determination that no genuine issue of material fact exists as to this claim and in granting

---

above, however, Appellant's averment that she was constructively discharged fails.

[7] Appellant, pointing to an incomplete document in the record, argues that she was denied payment for her sessions with her therapist. Burlington, however, in its reply, points to documents in the record that indicate that Appellant's doctor was paid. Appellant chose not to file a reply brief. Appellant's initial brief does not address the portions of the record to which Burlington cites. As far as we can tell, Appellant has never refuted, either in the district court or in her opening brief, the evidence showing that the bills were ultimately paid. Since the summary judgment evidence indicates that she was paid, there was no ultimately adverse employment decision regarding her compensation. *See Green*, 284 F.3d at 657 ("Adverse employment actions include only *ultimate* employment decisions such as [. . .] compensating.") (emphasis added).

[8] Appellant presents no evidence that she was entitled to sick pay or that she notified Burlington that she was sick. She simply refused to go to work and gave Burlington no documentation that she was ill. Absent proof that she was entitled to the pay and let Burlington know that she was, there was no actual denial of compensation. Even if there was, she could not show a nexus "between the protected activity and the adverse employment action." *Green*, 284 F.3d at 657.

[9] As the district court noted, Appellant was not eligible for company health insurance after she resigned. To the extent Burlington failed to reimburse Appellant after she resigned for prepaid premiums, this supports, at most, a restitution claim. She was not an employee when they failed to refund her premiums. The failure to reimburse prepaid premiums, *a fortiori*, was not an adverse employment action, but rather an action taken after Appellant had already ceased to be an employee.

7

summary judgment in favor of Burlington on this claim.[10]

## B. The ADA claim

The ADA proscribes employment discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C.A. § 12112(a) (West 2004); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). "To make out a prima facie case of discrimination under the ADA[, Appellant] must show that (a) [s]he has a disability; (b) [s]he is a qualified individual for the job in question; and (c) an adverse employment decision was made because of h[er] disability."  *Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998).  Disability is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.
> 42 U.S.C.A. § 12102(2) (West 2004).

On appeal, Appellant challenges only the district court's determination that Burlington regarded her as having a disability.  To prevail, therefore, Burlington must have regarded Appellant "as significantly restricted in [her] ability to perform a class or broad range of jobs." *Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998).  "The

---

[10]     Because Appellant did not suffer an adverse employment action, she cannot prevail on her Title VII retaliation claim. *See Evans*, 246 F.3d at 351.  Burlington's reasons for taking actions that do not amount to an adverse employment action are irrelevant.  Accordingly, Burlington's reason for taking the actions it did are of no import.  Appellant's argument that Burlington's justification for its actions was a pre-text, therefore, is unavailing even if true.

[relevant] EEOC regulations make plain that an inability to perform one particular job, as opposed to a broad range of jobs, does not constitute an impairment that substantially limits one's ability to work." *Gowesky v. Singing River Hosp. Systems*, 321 F.3d 503, 508 (5th Cir. 2003) (citing 29 C.F.R. § 1630.2(j)(3)(I)). "For an employer to regard an impairment as substantially limiting work, the employer must regard an individual as significantly restricted in his ability to perform a class or broad range of jobs." *Hamilton v Southwestern Bell Tel. Co.*, 136 F.3d 1047, 1051-52 (5th Cir. 1998); *see also Gowesky*, 321 F.3d at 508.

Appellant has made no showing whatsoever that Burlington regarded her as unable to perform a broad range of jobs. Moreover, the uncontroverted summary judgment evidence indicates that even as late as the moment Appellant resigned, Burlington viewed her as able to perform her job. Appellant's claim that Burlington regarded her as having a disability fails as a matter of law. Summary judgment was appropriate.[11]

## C. The intentional infliction of emotional distress claim

Appellant appeals the district court's summary judgment dismissal of her state law intentional infliction of emotional distress claim. This Texas state law claim was adjudicated in federal court despite the dismissal of the federal claims per the supplemental jurisdiction

---

[11] We note that Appellant claims that "[t]he district court erred in finding that the same facts that were analyzed for sexual harassment were the same facts to weigh to decide whether Donaldson was subjected to discrimination because of her disability or perceived disability" is cryptic at best. As we have demonstrated above, Appellant's claims in the district court and on appeal fail as a matter of law. We, therefore, need not further analyze Appellant's claim that the wrong facts were considered vis-à-vis each claim. Appellant has not shown the existence of a genuine issue of material fact. *See* Fed. R. Civ. Pro. 56. That is the relevant standard.

statute.[12] 28 U.S.C.A. § 1367 (West 2004); *see also, e.g., Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002).

"To recover under [the independent tort of intentional infliction of emotional distress], a plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe." *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998) (internal quotation marks omitted). For our purposes, Appellant has alleged and supported with evidence sufficient to create a genuine issue of material fact the first, third, and fourth prongs. We, therefore, focus on whether Burlington's "conduct was extreme and outrageous." "'It is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'" *Wornick Co v. Casas*, 856 S.W.2d 732, 734 (Tex.1993) (quoting Restatement (Second) of Torts § 46, cmt. h).

"Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous behavior." *Porterfield v. Galen Hosp. Corp., Inc.*, 948 S.W.2d 916, 920 (Tex. 1997). "Only in the most unusual of employment cases does the conduct move out of the realm of an ordinary employment dispute and into the classification of extreme and outrageous as required for the tort of intentional infliction of emotional distress." *Id.* at 920-21 (internal quotation marks omitted).

Appellant argues three facts support her claim, all stemming from the meeting she had

_____

[12] Appellant does not appeal the district court's discretionary exercise of its supplemental jurisdiction.

with two Burlington managers some four months before she resigned: 1) a statement made by one of the two managers present that she would be "squashed like a bug" if she continued sending memoranda in the manner in which she had been sending them, 2) that two managers raised their voices at her while pointing their fingers in her face, and 3) that the managers peppered her with nearly two and a half hours of verbal abuse.

Although behavior such as that allegedly inflicted upon Appellant is unseemly, it could not reasonably be considered to rise to the level of extreme and outrageous behavior as that standard has been articulated by the Supreme Court of Texas. "Rude behavior does not equate to outrageousness and behavior is not outrageous simply because it may be tortious." *Natividad v. Alexsis*, Inc., 875 S.W.2d 695, 699 (Tex. 1994). Accordingly, Appellant's state law claim of intentional infliction of emotional distress fails as a matter of law. Summary judgment was appropriate as to this claim.

### III. CONCLUSION

Appellant cannot prove that she was constructively discharged or retaliated against in violation of Title VII. Likewise, she cannot prove any violation of the ADA. Finally, her state law tort claim also fails as a matter of law. The district court was correct in holding that no genuine issues of material fact exist in this case. Summary judgment in favor of Appellees was appropriate. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.