IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-21166
_____


WILLIE E. PRATT, and
BERNARD GARRETT

                                        Plaintiffs-Appellants,

                      versus

THE CITY OF HOUSTON TEXAS

                                        Defendant-Appellee.
_____

          Appeal from the United States District Court for the
                  Southern District of Texas, Houston

_____
                          April 19, 2001
Before JOLLY, JONES and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     The plaintiffs, two community service inspectors for the City

of Houston's Department of Public Works and Engineering, appeal the

district court's grant of summary judgment in favor of the City of

Houston on their Title VII and 42 U.S.C. § 1981 race discrimination

claims.  Because we find that there is sufficient evidence to infer

that race was a factor in the City's failure to promote either

Pratt or Garrett, we reverse the grant of summary judgment by the

district court.

                              I

                              1

In 1997, Willie Pratt and Bernard Garrett, both black men, were community service inspectors for the City of Houston's Department of Public Works and Engineering ("DPWE"). In July of 1997, DPWE posted a job opening for a senior inspector. The posting listed the position's minimum qualifications as (1) an associate's degree or certification/licensing in a technical specialty program of between eighteen months and three years' duration; (2) four years of experience investigating or inspecting criminal environmental pollution; (3) a valid Texas driver's license and compliance with the City's policy on driving. The posting also listed a preference for experience in criminal case development and environmental investigations. Under "Selections/Skills Tests Required," the posting stated "none."

Tom Collins, the chief inspector of the Neighborhood Protection Division of DPWE, supervised both Pratt and Garrett, and was responsible for selecting the new senior inspector. Most of the plaintiffs' claims of discrimination center on the allegation that Collins preferred white candidates and that he had decided to hire the white male who was eventually awarded the position before the hiring process even began. Pratt and Garrett point to Collins's attempt to lower the minimum qualifications for the senior investigator position before the opening was posted. Although there is no evidence indicating what qualifications Collins tried to change, the plaintiffs assert that Collins was attempting to make a white candidate eligible for the position.

2

The position's requirements were not changed, however, as the basic qualifications were standard city-wide and Collins had no authority to change them.

Pratt and Garrett both applied for the senior inspector position. Their qualifications exceeded the minimum requirements for the position. Pratt had a B.S. degree and a year of graduate school, two and a half years of experience as a pollution investigator for the Coast Guard, and had been a DPWE community service inspector for the prior two years. Garrett had a Master's degree and a Ph.D (pending submission of his dissertation) in environmental engineering, and had spent the previous four years as a community service inspector at DPWE.

In total, twenty-four people -- twelve blacks, seven whites, two Hispanics and two Pacific Islanders -- applied for the senior inspector position. A human resources specialist, Sally Layman, screened the applications for minimum requirements, and forwarded fifteen of them to Collins at DPWE, to conduct the primary interviewing. Of the fifteen forwarded applications, eight applicants were black, four were white, two were Hispanic, and one was Pacific Islander.

Garrett's application was forwarded; Pratt's application was not. Layman contends that she did not forward Pratt's application because she did not know the subject area of Pratt's degree. Pratt contends that he attached his resume with his application, and that Layman knew he had a degree and knew that he was an employee of the

3

department. After Pratt became aware that he had not been referred, he called the human resources department and orally provided the information. At that point, however, the application period had closed. Pratt also states that he informed Collins of his application and credentials. Collins did not inquire into the status of Pratt's application. The application of another black candidate, Marion Gale, also was not initially forwarded. Gale inquired personally about the status of his application, which was then forwarded to Collins. Although Collins says that he checked on Gale's application, that point is disputed.

The application of Edward Rutland, the individual who was eventually awarded the position, also was not forwarded. Rutland had completed twelve hours of college in addition to his high school diploma, had graduated from the Houston Police Academy, had forty hours of EPA hazardous waste operations training and had spent two of his twelve years as a Houston police officer in a "Rat on a Rat" program enforcing environmental laws. Rutland had been out of the police force for two years when he applied for the senior inspector position; he had not engaged in related work during the period. Neither was it clear that Rutland's educational background and his work experience met the minimum qualifications listed for the position.

When Layman failed to forward Rutland's application, several city employees, including Collins and Beatrice Link, Collins's supervisor, made inquiries on Rutland's behalf. The human

4

resources department reviewed Rutland's application again and determined that the combination of the forty hour course and Rutland's experience as a police officer satisfied the education and experience requirements. Layman therefore forwarded Rutland's application to the second stage.

After Layman referred the applications, Collins conducted preliminary interviews with the candidates. Collins administered a computer skills exam testing grammar, knowledge of environmental laws, and Microsoft Word Skills to all the interviewees. Collins did not give applicants official notice that the computer test would be part of the selection process.

Garrett interviewed for the Senior Inspector position. Many of the facts concerning the interview are in dispute. Collins asserts that Garrett was late for the interview. When Garrett arrived, Collins was not in his office; he was speaking to a colleague in the next door office. According to Garrett, Collins saw him but ignored him. While waiting for his interview, Garrett went to the drinking fountain, approximately fifteen feet away. In the meantime, believing that Garrett had left the building, Collins had Garrett paged. Garrett appeared at Collins's door immediately after the page. Collins then requested that Garrett complete the skills test. Garrett protested that a skills test had not been listed on the posting. Collins claims that Garrett then became angry and stormed out; Garrett contends that Collins became irate and began yelling at him, and that he left without taking the test

to defuse the situation.

Collins referred three candidates, including Gale, for final interviews with a three person panel. Garrett was not a finalist. The panel, of which Collins was a member, recommended Rutland to Link. Link considered the recommendation, and then recommended Rutland to the personnel department.

The plaintiffs argue that there is other evidence that Collins attempted to manipulate the hiring process to favor white candidates. Previously, Collins had canceled another senior inspector posting after looking at a list of qualified applicants, on which, the plaintiffs contend, all individuals, including Garrett, were black. Garrett and Pratt assert that Collins canceled the posting after Human Resources refused to refer an under-qualified white candidate whom Collins preferred.

Pratt and Garrett filed this law suit against the City, claiming violations of Title VII, 42 U.S.C § 1981, 42 U.S.C. § 1983, the Equal Protection Clause, and the Texas Commission on Human Rights Act. The district court granted summary judgment to the City in November 1999, holding that the plaintiffs did not create a material issue of fact as to whether race motivated the City's hiring decision. The plaintiffs appeal only their employment discrimination claims under Title VII and § 1981.

II

This court reviews the grant of summary judgment de novo, applying the same standard as the district court. Walker v.

6

<u>Thompson</u>, 214 F.3d 615, 624 (5th Cir. 2000). "Summary judgment is proper when the evidence, viewed in the light most favorable to the non-movant, reflects no genuine issues of material fact." <u>Rubinstein v. Administrators of the Tulane Educational Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000), <u>cert. denied</u>, 69 U.S.L.W. 3366 (U.S. Mar. 19, 2001)(No. 00-996). On a motion for summary judgment, a court reviews the facts in the light most favorable to the non-movant. <u>Walker</u>, 214 F.3d at 624.

To survive a motion for summary judgment, a Title VII[1] plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973). The City does not dispute that both Pratt and Garrett made a prima facie case of discrimination.[2] Once this prima facie case has been established, there is a presumption of discrimination, and the burden shifts to

---

[1] The elements of the claims under Title VII and 42 U.S.C § 1981 are identical. <u>Casarez v. Burlington Northern/Santa Fe Co.</u>, 193 F.3d 334, 337 n.3 (5th Cir. 1999). We therefore evaluate both claims using the same analysis.

[2] For a prima facie case of race discrimination, a plaintiff must prove that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was not promoted; and (4) either the position was filled by someone not in the protected class, or the person was not promoted because of his race. See <u>Rutherford v. Harris County, Texas</u>, 197 F.3d 173, 179 (5th Cir. 1999); <u>Shackelford v. Deloitte & Touche</u>, 190 F.3d 398, 404 (5th Cir. 1999). Because both Pratt and Garrett are black, fit the minimum qualifications for the position, and were not promoted to a position eventually filled by a white candidate, there is no question that they established a prima facie case of discrimination.

7

the defendant to articulate some legitimate, non-discriminatory reason for the challenged employment action. <u>McDonnell Douglas</u>, 411 U.S. at 802-04. If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for discrimination. <u>Id.</u>

After a Title VII case reaches the pretext stage, the question for summary judgment is whether a rational fact finder could find that the employer discriminated against the plaintiffs on the basis of race. See <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511, 113 S.Ct. 2742 (1993). "A prima facie case and sufficient evidence to reject the employer's explanation" may permit a trier of fact to determine that an employer unlawfully discriminated, and may therefore be enough to prevent summary judgment. <u>Reeves v. Sanderson Plumbing Products</u>, 530 U.S. 133, 148, 120 S.Ct. 2097 (2000). This showing, however, is not always enough to prevent summary judgment in favor of the employer. For instance, an employer would be entitled to summary judgment "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred." <u>Id.</u> Whether summary judgment is appropriate in any particular case depends on a variety of factors, including "the strength of the prima facie case, the probative value of the proof that the employer's explanation is false and any other evidence that supports the

8

employer's case and that properly may be considered." Id.[3] We have said that summary judgment is inappropriate "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the actions of which plaintiff complains." Vadie v. Mississippi State University, 218 F.3d 365, 373 (5th Cir. 2000), cert. denied, 121 S.Ct. 1092 (2001).

Both Pratt and Garrett established a prima facie case, and both plaintiffs were facially more qualified for the position than the white applicant who was hired. The City asserts a racially non-discriminatory reason for the failure to promote either Pratt or Garrett: Neither candidate completed the hiring process. However, both Pratt and Garrett introduced evidence that the City did not give them the opportunity to complete the hiring process. This evidence creates significant fact issues with regard to the City's motivation for not promoting the plaintiffs. Given these facts, the better resumes of the plaintiffs, the special treatment Rutland received, and the allegations that Collins discriminated in favor of white applicants on other occasions, a jury could reasonably infer that the hiring process was manipulated, and that it was pre-ordained that the white candidate would be awarded the

---

[3] Although Reeves was based on a motion for judgment as a matter of law, the standard is the same.

9

position over demonstrably better credentialed blacks. Under these facts, it is for the jury to further decide the ultimate question of whether the City of Houston denied either one of these plaintiffs the promotion because of their race. We therefore reverse the district court's grant of summary judgment in favor of the City.[4]

### III

Because we conclude that the evidence as a whole creates a question of fact with regard to the motivation behind the City's failure to promote Garrett and Pratt, and we find that a jury could infer discrimination based on race, we REVERSE the district court's grant of summary judgment to the City, and REMAND for further proceedings not inconsistent with this opinion.

R E V E R S E D and R E M A N D E D.

---

[4]We recognize that, even if there is a finding of prohibited discrimination, a remedy in this case may be problematic in that only one position was available, and Pratt and Garrett were not the only other applicants. We make no comment on this; we simply note the problem and leave it to the district court to resolve in the course of further proceedings. See Arnold v. United States Dep't of the Interior, 213 F.3d 193, 196 (5th Cir. 2000)("among multiple job applicants who fail to secure the position because of discrimination, only those who can prove that they would have gotten the position but for the discrimination can recover compensatory damages."), cert. denied, 121 S.Ct. 1080 (2001).