Angella **WYNN**

v.

**WHITNEY HOLDING CORPORATION**

No. CIV.A. 01–537–A.

United States District Court, M.D. Louisiana.

Sept. 13, 2002.

584

John B. Lambremont, Sr., Attorney at Law, Baton Rouge, for Plaintiffs.

Ernest R. Malone, Jr., The Kullman Firm, New Orleans, for Defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOHN V. PARKER, District Judge.

This matter is before the court on a motion by defendant, Whitney Holding Corporation ("Whitney"), .for summary judgment (doc. 15). Plaintiff, Angella Wynn, opposes the motion. Jurisdiction is based upon a federal question, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367, as plaintiff has filed suit under the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, and under Louisiana law.

Plaintiff brings this civil action alleging that defendant discriminated against her based on her alleged disability and race in violation of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and Louisiana law.

Whitney moves for summary judgment in its favor on all claims.

## Undisputed Facts

The following facts are taken from the statement of facts submitted by each party in accordance with LR56.1 and LR56.2M.

1. Carolyn Pfannenstiel interviewed plaintiff in the spring of 1999.

2. Plaintiff was ultimately hired as a teller at Whitney's Government Street Branch.

3. Prior to plaintiff's start date, plaintiff received training on Whitney's Cash Shortage Policy and Procedures.

4. During her employment at the Government Street Branch, plaintiff was supervised by Anita Stewart, Wanda Davis, and Kathy Holloway.

5. Plaintiff had no personal conflict or animosity with Ms. Stewart, Ms. Davis, or Ms. Holloway.

6. In January of 2000, plaintiff experienced a cash drawer shortage of approximately three hundred twenty dollars ($320.00).

7. Plaintiff was diagnosed with Multiple Sclerosis in February of 2000.

8. In February of 2000, plaintiff suffered numerous debilitating symptoms stemming from her Multiple Sclerosis;

9. After her diagnosis, plaintiff was hospitalized and required to absent herself from work for approximately two weeks.

10. Pfannenstiel was aware of plaintiff's diagnosis, and telephoned plaintiff in February of 2000 to discuss plaintiff's ability to return to work after her diagnosis. Pfannenstiel advised plaintiff that she would be unable to receive short-term disability benefits from the defendant until the completion of one year under defendant's employ.

11. When plaintiff provided Pfannenstiel with her doctor's note, Pfannenstiel provided reassurance to plaintiff about her illness and informed plaintiff about an acquaintance who was able to continue working despite Multiple Sclerosis, and who suffered from "good days and bad days."

12. Pfannenstiel contacted plaintiff on more than one occasion to discuss any Multiple Sclerosis "flare-ups" she was experiencing and to remind her that she was ineligible to receive short-term disability benefits.

13. Pfannenstiel inquired as to plaintiff's health because she considered it part of her job.

14. In March of 2000, plaintiff's doctor released her to work with no limitations.

15. Pfannenstiel "figured the doctor's excuse stated she could return to work, no limitations, so hey, you're on the road." Pfannenstiel informed plaintiff that she could still perform her job.

16. Many of plaintiff's symptoms recurred after February of 2000. Many of the symptoms have not subsided since plaintiff's original diagnosis in February of 2000.

17. In May of 2000, plaintiff experienced an unexplained cash drawer shortage of six hundred dollars ($600.00).

18. On June 5, 2000, plaintiff experienced an unexplained cash drawer shortage of approximately one hundred seventy dollars ($170.00).

19. No counseling sessions with defendant's branch administration were conducted after the May and June shortages.

20. Following the shortage in June of 2000, Pfannenstiel consulted with

Demetric Judson, Operations Manager for the Baton Rouge region, and Levin Lejeune. A determination was made that the three cash shortages were unacceptable.

21. Thereafter, Pfannenstiel conferred with John Thomas, the head of employee relations. Pfannenstiel and Thomas concurred that plaintiff's unaccounted for cash shortages warranted termination.

22. On June 6, 2000, Pfannenstiel and Judson advised plaintiff that her employment was terminated. In the termination meeting, Pfannenstiel explained to plaintiff that "Whitney could 'no longer afford to... keep [her] on as an employee because of the shortages'". Pfannenstiel inquired as to whether plaintiff's Multiple Sclerosis 'had anything to do' with plaintiff's cash shortages in May and June of 2000.

22. Plaintiff's drawer shortages in January and in May each constituted grounds for termination, but Pfannenstiel declined to terminate plaintiff based on plaintiff's overall performance as an employee.

23. After plaintiff's employment ended with Whitney, plaintiff worked in the pizza line for East Baton Rouge Food Service.

24. In September of 2000, plaintiff became employed as an office assistant/administrator at Young Life until February 2001, when she determined that she needed full-time employment.

25. Subsequent to plaintiff's employment at Young Life, plaintiff obtained full-time employment at Jehovah Jireh Academy, where she works as a teacher's aide.

26. Suk Yun, a senior teller employed by Whitney at the Broadmoor branch, was a victim of a substantial forgery in February 2000. As a result of the forgery, Yun was placed on a 90–day probation. Plaintiff has no personal knowledge of any alleged shortages committed by Yun, nor does plaintiff personally know Yun.

27. Mary Gish is a teller employed by Whitney at the Florida branch in Baton Rouge since 1995. Gish never had a total dollar difference in any given year of more than four hundred dollars ($400.00). Plaintiff has no personal knowledge of any shortages committed by Gish.

28. Belinda Guy, a teller employed by Whitney, was discharged on November 14, 1999 because of a shortage of four hundred dollars ($400.00).

29. Michelle McKenzie, a teller employed by Whitney, was discharged on November 23, 1999 due to shortages amounting to a net loss of one thousand one hundred sixty-two dollars and sixty-four cents ($1,162.64).

### Arguments

Whitney contends that summary judgment in its favor is proper in this case. Whitney first argues that plaintiff cannot establish a prima facie case of disability discrimination. Whitney argues that plaintiff cannot show that she suffered from a covered disability during her employment. Whitney argues that plaintiff cannot demonstrate that her disease substantially limited any major life activity, particularly the major life activity of working, as plaintiff has had gainful employment since the termination of her employment with Whitney. Whitney also argues that plaintiff admitted that her poor job performance was not related to her disorder. Whitney further argues that plaintiff

cannot show that Whitney regarded plaintiff as being disabled. Whitney also argues that plaintiff cannot show that she was treated differently than other employees who did not suffer from an impairment. Whitney contends that plaintiff's termination was based on actual shortcomings, and not on an alleged or perceived disability.

Whitney also argues that no issue of material fact exists as to plaintiff's race discrimination claim. Whitney argues that plaintiff cannot demonstrate that she was treated differently than similarly situated non-Black employees, nor can plaintiff demonstrate that Whitney's stated reason for terminating plaintiff's employment is pretextual.

In response, plaintiff contends that she was in fact disabled during her employment with Whitney. Plaintiff argues that she suffered significant restrictions in her ability to perform activities such as standing, walking, performing manual tasks, and lifting heavy objects. Plaintiff argues that although some of these symptoms abated after her hospitalization in February of 2000, the symptoms returned intermittently throughout employment with Whitney, particularly during times of stress or prolonged exposure to heat. Plaintiff argues that hand numbness and fatigue has persisted since her initial diagnosis in February of 2000. Plaintiff further argues that she was regarded as disabled by Whitney's Human Resource Coordinator, Carolyn Pfannenstiel, who repeatedly inquired as to plaintiff's ability to return to work and her eligibility for short-term disability benefits. Plaintiff argues that she was treated less favorably than non-disabled employees. Plaintiff further argues that the timing of her termination nine days prior to the date on which she would have become able to claim short-term disability benefits raises questions as to the legitimacy of her termination. Plaintiff further argues that she was treated differently than similarly-situated, non-Black employees.

### Law and Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] The party seeking summary judgment bears the initial burden of asserting the basis of the motion and demonstrating the absence of a genuine issue of material fact; he need not negate the nonmovant's claim.[2] Substantive law guides the determination as to which facts are material, and because the issues of material fact must be genuine, the presence of some alleged factual disputes, depending on what they are, will not necessarily defeat the motion.[3] The movant may discharge his burden by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case."[4]

Once the movant discharges his burden, the nonmovant must highlight specific facts which demonstrate that there is a genuine issue of material fact, but he may not rely upon allegations or denials of his pleading.[5] The nonmovant's "burden is

1.  Fed.R.Civ.P. 56(c).

2.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

3.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993).

4.  *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554.

5.  Fed.R.Civ.P 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992).

not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."[6] There is no genuine issue where the record could not lead a rational trier of fact to find for the nonmoving party.[7] Stated differently, the nonmovant "need only present evidence from which a jury might return a verdict in his favor."[8] Only then will a genuine issue be considered to exist. The court must resolve all factual inferences in favor of the nonmoving party, but only when the parties have each submitted contradictory factual evidence.[9]

In sum, summary judgment is mandated if the nonmovant fails to sufficiently establish the existence of an essential element of his case on which he bears the burden of proof, thereby dispensing with a genuine issue, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[10]

### Discrimination on the Basis of Disability

■ Under the Americans with Disabilities Act (ADA), an aggrieved employee must comply with administrative prerequisites, which include filing a timely charge of discrimination with the EEOC and re-

ceiving a right to sue letter before filing suit in the district court,[11] with which prerequisites plaintiff complied.

■ To establish a prima facie case of intentional disability employment discrimination under the ADA and Louisiana law,[12] plaintiff must come forward with evidence tending to show that:

1) plaintiff was an individual "with a disability" under the ADA;

2) plaintiff was qualified for the job in question; and

3) an adverse employment action was taken because of his disability.[13]

The threshold issue in a plaintiff's prima facie case is a showing that she suffers from a disability protected by the ADA,[14] which confers a special meaning to the term "disability":

1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

2) a record of such an impairment; or

3) being regarded as having such an impairment.[15]

### Actual Disability

An impairment, standing alone, does not constitute a disability under the ADA. Major life activities include functions such as

---

6. *Little,* 37 F.3d at 1075 (*citations omitted*).

7. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Amoco Prod. Co. v. Horwell Energy, Inc.,* 969 F.2d 146, 148 (5th Cir.1992).

8. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514.

9. *Little,* 37 F.3d at 1075.

10. *Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552; *see Little,* 37 F.3d at 1075.

11. *Dao v. Auchan Hypermarket,* 96 F.3d 787, 789 (5th Cir.1996).

12. Louisiana law closely follows the ADA wording and jurisprudence.

13. *Robertson v. Neuromedical Center,* 161 F.3d 292, 294 (5th Cir.1998), *citing Hamilton v. Southwestern Bell Telephone Co.,* 136 F.3d 1047, 1049 (5th Cir.1998).

14. *Hamilton,* 136 F.3d at 1049, *citing Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996).

15. 42 U.S.C. § 12102(2).

caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.[16] An impairment substantially limits a major life activity if it renders the individual unable to perform a major life activity that the average person in the general population can perform or significantly restricts the condition, manner or duration under which the individual can perform the major life activity as compared to an average person.[17] Whether an impairment substantially limits a major life activity therefore is determined in light of the nature and severity of the impairment, its duration or expected duration, and its permanent or expected permanent or long-term impact.[18]

■ Whitney maintains that plaintiff's multiple sclerosis does not constitute a covered disability because plaintiff is able to perform a broad range of jobs. Courts are to look first to whether the impairment substantially limits a major life function other than working, and if there is no evidence of such a limitation, then to whether the impairment limits the major life function of working.[19]

■ Multiple sclerosis does not automatically qualify as a disability under the ADA. Plaintiff maintains that, during her employment with Whitney, she suffered significant restrictions to her ability to perform a wide range of activities including standing, walking, performing manual tasks, and lifting heavy objects. Plaintiff has submitted an affidavit in which she attests that hand numbness and fatigue which has persisted since her hospitalization in February of 2000 prevents her from lifting heavy objects and from performing certain manual tasks such as cooking.[20] Plaintiff has also submitted a letter from Jon D. Olson, M.D., in which Dr. Olson states that plaintiff experiences left-sided weakness and left visual loss, fatigue and an altered gait.[21] Dr. Olson states that standing is an understandably difficult task for plaintiff, due to her condition.[22] Dr. Olson indicates that plaintiff will "...continue to have relapses and remission that will affect her stamina, fatigue and perhaps transient worsening of her gait, vision, etc. requiring some special accommodations at her place of work."[23] Further, Dr. Olson indicates that "[h]er exacerbation frequency appears to be approximately twice per year and is expected to last from one week to two months for each exacerbation."[24]

■ Moderate restrictions on the ability to walk do not amount to a substantial limitation.[25] Although Dr. Olson indicates that plaintiff may suffer a "transient worsening of her gait,"[26] plaintiff has pre-

**16.** 29 CFR § 1630.2(i).

**17.** 29 CFR § 1630.2(j).

**18.** *Id.*

**19.** *Hamilton*, 136 F.3d at 1050.

**20.** Affidavit of Angella Wynn.

**21.** Plaintiff's Exhibit F, Correspondence dated May 14, 2002, from Jon D. Olson, M.D., The Neuromedical Center, to counsel for plaintiff. Defendant properly objects to this exhibit but the court concludes that the exhibit is not sufficient to demonstrate a contested issue of *material* fact, even if considered.

**22.** Plaintiff's Exhibit F.

**23.** Plaintiff's Exhibit F.

**24.** Plaintiff's Exhibit F.

**25.** *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir.1999) (limping, "mov[ing] at a significantly slower pace than the average person," and difficulty walking in extreme cold do not constitute a substantial impairment).

**26.** Plaintiff's Exhibit F.

sented no evidence that the restriction on her ability to walk is more than moderate. Plaintiff is still physically capable of walking. Further, although plaintiff indicates that she is unable to lift heavy objects, plaintiff has provided no guidance as to what she considers to be "heavy" or what restrictions have been placed upon her by Dr. Olson. The inability to lift heavy objects does not constitute a substantial limitation on a person's overall ability to lift as the capacity to perform heavy lifting is not a trait shared by the majority of the population.[27] The court finds that more specific evidence on these issues is necessary to withstand summary judgment on the issue of a covered disability. Plaintiff has failed to set forth a genuine issue of material fact with respect to whether her impairment substantially limited her ability to perform a major life activity other than working. Plaintiff was impaired but not disabled.

■ With regard to the major life activity of working, plaintiff was able to perform her job after her initial hospitalization, admits that her impairment did not affect her ability to perform her job, and has performed a wide range of jobs since her employment with Whitney. Thus plaintiff is not substantially limited in her ability to work.

## Record of Disability

Having a record of impairment means having a history of a mental or physical impairment that substantially limits one or more of the major life activities.[28] The parties have presented no evidence on this issue.

## Perception of Disability

■ An individual is "regarded as" disabled where a covered entity mistakenly believes that:

1) the person has a physical impairment that substantially limits one or more major life activities; or

2) an actual, nonlimiting impairment substantially limits one or more major life activities.[29]

In both instances, the covered entity must entertain some misperception regarding the individual-either that he has a substantially limiting impairment that: (1) he does not have; or (2) is not so limiting as believed.[30]

■ Plaintiff asserts that Carolyn Pfannenstiel, the Human Resource Coordinator for Whitney, regarded plaintiff as disabled. Plaintiff contends that:

Ms. Pfannenstiel telephoned her on 'more than one occasion' after her initial hospitalization. During these telephone calls, Ms. Pfannenstiel informed plaintiff about an acquaintance with Multiple Sclerosis and his 'good days and bad days.' In addition, Ms. Pfannenstiel persistently inquired about plaintiff's ability to return to work and often reminded plaintiff that she was not eligible for short-term disability benefits. These statements, . . . exhibit Ms. Pfannenstiel's misgivings regarding plaintiff's ability to perform her work duties. Indeed, Ms. Pfannenstiel's repeated comments regarding plaintiff's inability to seek short-term disability benefits suggest her belief that, at some point prior to the anniversary date of her employment, Ms. Wynn would be rendered unable to work.[31]

27. *Ray v. Glidden Co.*, 85 F.3d 227 (5th Cir. 1996). The court notes that there is no evidence that plaintiff's employment required her to do "heavy lifting," no matter how that term may be defined.

28. 29 CFR § 1630.2(k).

29. *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 316 (5th Cir.2001), *citing Sutton v. Unit-*

*ed Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

30. *Id.*

31. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, pages 9-10.

The court does not concur with this suggestion. Plaintiff was returned to work without restrictions, which was noted by Pfannenstiel. The only evidence plaintiff offers is the fact that defendant was aware of her impairment. This is insufficient to demonstrate that plaintiff was regarded as disabled.

Plaintiff has failed to establish a genuine issue of fact as to whether she suffers from a disability protected by the ADA.[32] Summary judgment in favor of Whitney as to plaintiff's claims for discrimination on the basis of disability is therefore proper.

### Discrimination on the Basis of Race [33]

Title VII[34] makes it illegal for an employer "to discharge any individual ... because of such individual's race,...."[35] To establish her case, the plaintiff must establish a prima facie case of discrimination through one of three methods: (1) by direct evidence of discriminatory intent, (2) by meeting the McDonnell Douglas test, or (3) through statistical proof.[36] Since neither party offers any direct evidence or statistical proof of race discrimination, it will not be considered in this ruling.

To establish a prima facie case of racial discrimination under Title VII, plaintiff is required to show that she is a member of a protected group, was qualified for her position, and suffered an adverse employment action.[37] Plaintiff must also establish that Whitney treated her differently than other, non-Black employees.[38] If plaintiff makes this prima facie showing, defendant must respond with some legitimate, nondiscriminatory reason for the employment action.[39] If defendant makes the required showing, the burden of proof returns to plaintiff to demonstrate that Whitney's articulated reason was a pretext for the real, discriminatory reason.[40]

In this case, Whitney does not dispute that the plaintiff was qualified for her position, was discharged, and was a member of the protected class at the time of discharge. The fourth element of the test, and the issue of pretext, however, is in dispute between the parties.

▊ Plaintiff alleges that other White or Asian bank tellers under Whitney's employ have committed violations of Whitney National Bank policy similar to or more severe than the violations for which plaintiff was terminated and yet these tellers were not terminated from their employment.

The evidence shows that, between January and June of 2000, plaintiff experienced approximately $1,090.00 in total cash drawer shortages.[41]

---

**32.** The court therefore does not reach the issues of whether plaintiff was qualified for the job in question or whether an adverse employment action was taken because of plaintiff's disability.

**33.** Plaintiff has filed a timely charge of discrimination with the EEOC and has received a right to sue letter, and thus has complied with the administrative prerequisites of filing an action under Title VII. See Petitioner's First Supplemental and Amending Petition Filed Prior to Defendant's Answer.

**34.** Louisiana law closely follows the Title VII wording and jurisprudence.

**35.** 42 U.S.C.A. § 2000e–2(a)(1) (1994).

**36.** Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**37.** *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 318 (5th Cir.2001), *citing Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir.2001).

**38.** *Id.*

**39.** *Id.*

**40.** *Id.*

**41.** Plaintiff's Exhibit H.

The evidence shows that Belinda Guy's (White) employment as a Whitney teller was terminated on November 14, 1999 after seven months of employment for unacceptable work performance.[42] Guy had a $400.00 shortage on October 29, 1999 and a total shortage to date of $929.73.[43] Guy reported 41 shortages during her employment with Whitney.[44]

The evidence shows that Michelle McKenzie's (White) employment as a Whitney teller was terminated on November 22, 1999 while still in her probationary period with Whitney and after two months of employment for unacceptable work performance.[45] McKenzie committed a $200.00 error on November 9, 1999, and a $909.05 error on November 18, 1999.[46] McKenzie committed six errors totaling $1,162.64.[47]

The evidence shows that Mary Gish (White), employed by Whitney since September of 1995, reported 22 differences totaling $91.33 as of August 17, 1999.[48] Gish never had a total dollar difference in any given year of more than $400.00.[49] Gish was not terminated from her employment with Whitney.

The evidence shows that Suk Yun (Asian), Senior Teller at the Broadmoor Branch, was placed on probation for 90 days effective February 11, 2000, for allowing a fraudulent withdrawal in the amount of $7,000.00.[50]

Plaintiff contends that Gish and Yun were not terminated despite more severe errors, and that plaintiff was treated less favorably than these employees because of her race. Plaintiff further submits that Guy and McKenzie are not comparable to her case, because these employees were only recently hired when the errors were committed.

The court finds that plaintiff has not shown disparate treatment. Some White employees have been treated more harshly, some less so harshly. The bottom line is that some White employees of Whitney have been terminated for comparable conduct. That it might be said that plaintiff possibly should have been disciplined short of termination is of no moment in this proceeding. The only question before this court is whether or not plaintiff was treated differently from similarly situated non-Black employees when she was terminated. Although Whitney may not have disciplined with absolute consistency, plaintiff has not shown such inconsistency from which it may be inferred that she was disparately treated because of her race, Black.

Accordingly, for the reasons assigned, the motion by defendant, Whitney Holding Corporation ("Whitney"), for summary judgment (doc. 15), is hereby GRANTED and this action shall be dismissed.

---

42. Plaintiff's Exhibit M.

43. Plaintiff's Exhibit M.

44. Plaintiff's Exhibit M.

45. Plaintiff's Exhibit N.

46. Plaintiff's Exhibit N.

47. Plaintiff's Exhibit N.

48. Plaintiff's Exhibits K, L.

49. Plaintiff's Exhibits K. L.

50. Plaintiff's Exhibit I.